## Petty v. Petty, et al.

(Decided June 14, 1927.)

### Appeal from Kenton Circuit Court.

1. Husband and Wife.—Where husband and wife held real estate jointly "for and during their joint lives with remainder in fee to the survivor of either," wife became owner of fee on death of husband, not as survivor or heir of husband but by virtue of deed, in view of Ky. Stats., section 2143, and she took fee free from any charges on property made by cotenant.

2. Joint Tenancy.—In case of joint tenancy with survivorship, joint tenants, as between each other, were each liable for one-half of joint indebtedness, and, if either paid entire lien indebtedness, he was entitled to contribution to extent of one-half as against the other, and was subrogated to original lien on cotenant's interest to that extent, but for one to recover against the other, failure to reimburse plaintiff must be alleged or pleading is demurrable.

3. Witnesses.—Mother was incompetent to testify to acts by and conversations with deceased son to sustain her claim against his estate, based on notes signed by him to obtain money for use in discharging mortgage for improving real property held jointly with his wife.

4. Witnesses.—Mother suing daughter-in-law on note signed by deceased son, in which plaintiff asked that lien be adjudged in favor of decedent's estate for her benefit on land owned by decedent and wife jointly for life, remainder in fee to survivor, which was

improved with proceeds of loan, held incompetent to testify as to son's acts and conversations in order to sustain estate's claim, since she was the real party in interest.

5. Evidence.—Statements made by deceased son against his interest are competent in suit by mother against his estate to show that it was indebted to her.

6. Evidence.—Statements made by deceased son while not acting as agent for wife relative to use of borrowed money to improve land held jointly with wife held inadmissible in suit by estate against wife for contribution, since they were then self-serving.

S. D. ROUSE and ROUSE & PRICE for appellant.

BEN BIEDENHARN, JR., for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Reversing.

In August, 1918, a certain house and lot was conveyed to Harold S. Petty and his wife, Nellie J. Petty, jointly ''for and during their joint lives with remainder in fee to the survivor of either, their heirs and assigns forever.'' At the same time Harold and Nellie executed 16 joint notes of $100 each, due three months apart, and one note for $900, due 4½ years from date, and also executed a joint mortgage upon the real estate named to secure this indebtedness. Harold died in April, 1923, and his widow qualified as administratrix. In July, 1924, Harold's mother, Antha A. Petty, sued Nellie A. Petty individually and as administratrix upon a note payable to plaintiff, and executed by Harold S. Petty on February 12, 1920, for $3,000, subject to a credit of $1,000. She sought personal judgment against both, and also to subject the real estate mentioned to the payment of the debt. It was alleged in the petition that the money loaned by her was used in discharging the mortgage and in making improvements upon the property for the benefit of the defendant, and for that reason she was entitled to be subrogated to the rights of the mortgagee, and, if not entitled to that relief, that a lien be adjudged in favor of the decedent's estate for her benefit. The court overruled a demurrer to the petition as amended, and the defendant answered, denying that the money was used in discharging the mortgage debt or in making improvements, or that H. S. Petty paid any part of her share of their joint indebtedness. She also pleaded the five year statute of limitation, to which a demurrer was sustained, and, upon the issues joined, proof was taken and the

court adjudged the plaintiff a lien upon the real estate in the sum of $1,250, and adjudged a sale enforcing the lien. The defendant, Nellie Petty, appeals.

It is urged first that the court erred in overruling a demurrer to the petition. That pleading alleges a joint indebtedness to the bank secured by a lien on the joint property; that Harold borrowed the money evidenced by the note for the purpose of paying this indebtedness; that it was so used and the lien released, but it is not alleged that Harold paid the debt, nor is it alleged that Nellie has not paid nor satisfied Harold for any obligation arising thereby. As to this it may be said that one who pays a joint debt is entitled to contribution from his co-obligors and that a tenant who relieves common property from a lien is subrogated to the lien on his cotenant's part for the excess he has paid over his proportionate share. We think this rule applies with equal force to a joint tenancy with survivorship. It is true that upon the death of Harold appellant became the owner of the fee, not as heir of her husband or through him, but by virtue of the deed (Ky. Stats., section 2143; Harris v. Talliferro, 148 Ky. 150, 146 S. W. 22; City of Louisville v. Coleburne, 108 Ky. 420, 56 S. W. 681, 22 Ky. Law Rep. 64; 33 C. J. 903, section 4), and took the fee free from any charges on the property made by her cotenant (33 C. J. 903, section 4; Fleming v. Fleming, 194 Iowa, 71, 174 N. W. 946, 180 N. W. 206, 184 N. W. 296). Yet so long as both lived they were cotenants. Each was individually responsible for all of the joint indebtedness incurred by them, and the two could place the entire property in lien therefor. But as between themselves each was liable for one-half of the indebtedness, and if either paid the entire lien indebtedness he was entitled to contribution to the extent of one-half of the indebtedness as against the other, and was subrogated to the original lien upon his cotenant's interest to that extent as in other cases of cotenancy. However, the cotenant's obligation arises on an implied promise to reimburse the one so paying the debt, and the breach of his obligation consists in failing to do this; hence, in seeking a recovery against him, it is essential to allege such failure, otherwise the pleading is demurrable. 13 C. J. 731, section 863; Id. 734, section 869. The demurrer to the petition was overruled and no proof was taken on this point; hence the judgment must be reversed. It is also urged that the petition was bad in not alleging a direct payment to the

bank by Harold. There was an allegation that the money received by his mother was used for that purpose, and an issue made on this question. While not direct and certain, under the issues formed by the answer perhaps this defect was cured; at any rate it may be corrected on a return.

As the pleadings may be amended and other proof taken upon such amendments, it is well to consider the exceptions to the evidence now appearing therein. The plaintiff introduced in evidence several checks and notes, and undertook to detail certain transactions with her deceased son, and also testified as to a conversation with appellant thus: "She asked me when I could let them have the money, or when I was going to let them have it," and I said, "Whenever you want it;" in another place, "Well, I don't know that she said anything in particular, but just wondered when they could have the money, as they were anxious to improve their home"—it not appearing that she ever talked to either in the presence of the other. She also states that she sold her farm for $5,000; that she lived in appellant's home for over a year, in the years 1918 and 1919. The lower court properly ruled that her testimony as to acts by or conversations or transactions with Harold Petty was incompetent on the hearing of the issues between her and the estate of Harold Petty, but held such evidence competent in favor of Harold's estate as against Nellie Petty. In this the court was in error. Plaintiff was the real party in interest, and her testimony was inadmissible. See Combs v. Roark, 206 Ky. 454, 267 S. W. 210. However, she could testify as to other matters. Four checks, drawn on the First National Bank, by Antha A. Petty, and the note sued on, were introduced in evidence and the signatures thereto identified by O. S. Ware. One of these checks for $61, payable to and indorsed by H. S. Petty, was executed April 22, 1918, four months before the mortgage notes were executed; another for $2,000 was dated March 10, 1917, signed by Antha A. Petty and payable to H. S. Petty and indorsed by him and Latonia Deposit Bank; a third for $453, payable to the Latonia Deposit Bank, signed and indorsed by Antha A. Petty and the Latonia Deposit Bank dated some time in 1918; another for $1,900 was dated the 27th of March, 1919, signed by Antha A. Petty, payable to self without any indorsement. Mr. O. S. Ware testifies that plaintiff is his aunt and that Harold was his cousin; that

he was very intimate with the family; that in March, 1922, his aunt, who was then living in Ohio, sent him this note for collection; that aside from the signature it is entirely in Harold's handwriting. It is dated February 12, 1920, for $3,000, and payable on demand. He wrote Harold in reference to the note and received a communication admitting his indebtedness and referring to the payment of $1,000 on the note and having written his mother in reference thereto; later his aunt wrote him to return the note to her which he did. He further stated that shortly after this time he had a conversation with Harold in which Harold explained the circumstances under which he secured the money from his mother. "He told me about purchasing the property which was purchased from Mary Dehlinger in August, 1918, on Thirty-Third street where he was living at the time I talked to him, and that his mother had sold her property consisting of a farm near White's Tower in this county which was left to her by her husband, and that she had the money on hand from the sale of the farm, and he asked her to let him have it to pay the mortgage off on his house, and which he used for that purpose and for the further purpose of making some improvements on the property he bought. He (witness) knows that the plaintiff sold her property in the country and received a good price therefor; he knows the handwriting of all the parties and all of the written portion of the $2,000 check, excepting the name of the maker, is in the handwriting of H. S. Petty. He also states that the writing on the other checks, aside from signatures and indorsements, is in Harold's handwriting." Exceptions were filed to all of this testimony. As to this, any statements made by Harold against his interest would be competent in a suit of his mother against his estate to show that it was indebted to her, and there can be no question that such indebtedness is amply proven. However, in these transactions Harold was not acting as the agent for his wife, and in a suit by his estate against her involving the same transactions such statements would be self-serving on his part and therefore incompetent.

For obvious reasons the court expresses no opinion as to the effect of the competent evidence left in the record.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.