## O. H. Irvine v. Old Kentucky Distillery and Joseph J. Sass.

(Decided December 16, 1924.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Corporations—Fund Set Aside for Payment of Tax Prior to Reduction of Stock Belonged to Corporation and Not Stockholders.— Fund set aside by corporation for payment of income tax prior to reduction of corporate stock belonged to corporation and not to stockholders, who were paid par value of stock surrendered, so that stockholder, subsequently to selling stock, was not entitled to share in balance of fund on reduction of tax.

2. Corporations—Evidence Held Insufficient to Prove Mutual Mistake in Sale of Stock.—Evidence held insufficient to prove that sale of corporate stock was at book value and by mutual mistake failed to include fund set aside for payment of income tax, and probability of substantial reduction by claim of obsolescence.

3. Corporations—Mistake of Judgment as to Value of Stock Not Ground for Relief.—One will not be relieved from consequence of a mistake of judgment in sale of stock as to its value.

MATTHEW O'DOHERTY and W. W. THUM for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

In the latter part of the year 1918, the officers, directors and stockholders of the Old Kentucky Distillery, a

Kentucky corporation, which, for some years, had been engaged in manufacturing and selling whiskey, inaugurated plans for closing out its business. The adoption of the Eighteenth Amendment made that seem to be necessary. The corporation was capitalized at $800,000.00, divided into eight thousand shares of the par value of $100.00 each. All the stock was owned by five persons; appellant, O. H. Irvine, owning 3,500 shares; R. H. Irvine owning 1,300 shares; appellee, Joseph J. Sass, owning 2,400 shares; J. K. Graves, owning 550 shares, and A. F. Faure, owning 250 shares. Its business had been very profitable during the year 1918. An accountant employed to audit the year's business and prepare the income tax schedule for the corporation ascertained that it had made approximately $500,000.00 during that year. He estimated the federal income tax at $325,000.00, but advised that because of the adoption of the Eighteenth Amendment and consequent destruction of the whiskey business he was of the opinion that on a claim for obsolescence the amount of tax could be very materially reduced, and in his judgment as much as 75%. All the debts of the corporation were paid. $325,000.00 was set aside as a tax fund to take care of the 1918 taxes. All of the assets, in excess of the $800,000.00 capital stock, except the tax fund above, were distributed to the stockholders in a dividend. The stockholders then proceeding in accordance with the statutory provisions on the subject and in a manner, the regularity of which is not questioned, reduced the capital stock of the corporation from $800,000.00 to $200,000.00. Each of the stockholders surrendered for cancellation three-fourths of his stock and was paid for same its par value, $100.00 per share. According to the records of the corporation the reduction of its capital stock occurred on the 15th day of January, 1919. On the following day appellee, Joseph J. Sass, purchased from appellant, O. H. Irvine, all of his stock, 875 shares, in the corporation then capitalized at $200,-000.00, and at the price, as he contends, of $120,00 per share. There is no controversy between the parties about appellant selling to appellee this stock and being paid for same.

With reference to the obsolescence claim as a deduction from its taxable income for the year 1918, the corporation employed the tax accountant to prosecute that claim, and some arrangement seems to have been made with the Internal Revenue Department by which the pay-

ment of the 1918 taxes was deferred until that matter could be finally settled and determined. As is usually the case, considerable time elapsed before it was settled, but in May, 1921, a settlement was made by which the amount of the taxes for 1918 was reduced to and settled at $16,000.00, a saving of over $300,000.00 from the amount at which the tax originally had been estimated. About a month after that settlement was made appellant, O. H. Irvine, brought this lawsuit by which he sought to recover that proportion of the salvage from the 1918 tax fund that the number of shares of stock owned by him in the corporation at the end of 1918 bore to its then capital stock, and he contends that he is entitled to recover upon two theories. First, he contends that upon the reduction of the capital stock of the corporation from $800,000.00 to $200,000.00 all the surplus assets of the corporation above the $200,000.00 capital stock passed to the then stockholders of the corporation by operation of law; and that the sale of his stock after the reduction of the capital stock of the corporation did not carry with it his interest in such surplus assets. Second, he contends that if such be not the case, when he later sold his stock to appellee the contract of sale was made on the basis of the book value of the stock; that by mutual oversight and mistake he and appellee failed to take into account in ascertaining the book value of the stock the $325,000.00 tax fund item, and that because of that mistake he is entitled to recover.

It is manifest that the first contention is purely a legal question. In support of it appellant has cited Jerome v. Coggswell, et al., 204 U. S. 1; Seely v. New York Natl. Exch. Bank, 8 Daly, 400, 78 N. Y., 608; Strong v. Brooklyn Crosstown Ry., 24 N. Y. 426, and texts from certain textbooks and encyclopedias which seem to be based upon the three cases above. The three cases, *supra,* do not, as we understand them, establish as a principle of law that when a corporation reduces its capital stock the stockholders at the time of the reduction thereby become the owners of all of the assets of the corporation in excess of the amount to which the capital stock has been reduced, or that they then are entitled to force the same to be distributed to them. In each of those cases the reduction of the capital stock of the corporation became necessary because the capital assets had depreciated in value with a consequent impairment of the capital stock. It became necessary under the law of the sovereignty

under which the corporation existed to reduce the capital stock to a point where there would be no impairment of the capital stock. In making the reduction of the capital stock of those corporations the stockholders were not paid for their surrendered stock, the loss in that way falling upon them. The principles of law enunciated in those cases settle the right as between the stockholders and their corporation to the proceeds of the retired capital assets when a reduction of the capital stock is made in a case where the stockholders are not paid for their stock surrendered in carrying out the reduction. In the Jerome case the reduction of the capital stock of a national bank was involved. It was made under the supervision of the comptroller of the currency. The assets of the bank constituting its reduced capital were approved by the comptroller. The assets in which the capital stock of the bank had been invested which had become depreciated in value necessitating the reduction of the capital stock, when retired, under express orders of the comptroller, were set aside in a special trust fund for the benefit of the holders of the stock that had been surrendered to be distributed among them as realized upon in the course of business. It was held in that case that under its facts a subsequent transfer by a stockholder of his stock in the reduced corporation did not carry with it the right to participate in the proceeds of the depreciated assets so set apart.

The material difference between the facts of the instant case and those of the cases, *supra,* render the principles enunciated in those opinions wholly inapplicable to this case. Here, upon the surrender of the stock in the corporation, each of the stockholders was paid in cash the par value of his stock. The corporation had no surplus fund. Each year all its profits had been distributed in dividends. There had been set aside to pay the 1918 income tax $325,000.00. Stockholders, including appellant, O. H. Irvine, all knew that the corporation was endeavoring to reduce the amount of the federal income tax by a claim for obsolescence. The income tax was a liability of the corporation and not that of its stockholders. The fund set aside to meet that liability was the corporation's fund; not that of its stockholders. It was set aside from the 1918 earnings into a special expense account. It was only a contingent asset and was in no sense a capital asset of the corporation. The capital stock of the corporation was reduced from $800,-

000.00 to $200,000.0 by the corporation with full knowledge upon the part of all of its stockholders that eventually there would have to be paid from the corporation's funds whatever amount might be found to be due as income taxes for 1918 upon the settlement of the obsolescence claim. That amount would have to be paid by the corporation, although in the meanwhile its capital stock might be reduced. When the stockholders were paid the par value of their stock upon the reduction, which was all of the proceeds of the retired capital assets, their rights arising from the reduction of the capital stock were fully satisfied. The tax fund was the property of the corporation both prior and subsequent to the capital stock reduction. The individual stockholders had no interest in same, except in so far as any salvage from it might eventually be distributed to them in dividends. Sale of the stock necessarily carried with it all such interest in the fund. The principles enunciated by the opinions and textbook writers relied upon by appellant have no application to a state of facts such as are here presented to us. We are clearly of the opinion, under the facts of this case, that when appellant sold his stock in the Old Kentucky Distillery to appellee, even if he did so after the reduction of its capital stock, he thereby transferred to him all his interest in the assets of the corporation and that he has no right to participate in the distribution of the amount salvaged from the funds set aside by the corporation to meet the 1918 taxes.

Appellant contends, however, that although we may reach that conclusion, yet he is entitled to share in the distribution of the amount saved from the estimated 1918 taxes because in making the sale of his 875 shares of stock in the Old Kentucky Distillery to appellee after its capital was reduced, the contract of sale was made on the basis of the book value of the stock, and by mutual mistake the parties overlooked and failed to take into account in determining such value the $325,000.00 set aside to meet the 1918 taxes and the probability of its being materially reduced by the claim of obsolescence. Appellant's contention in this particular must fail in view of his own testimony on the question. He claims to have sold the 875 shares of stock at $120.00 per share, asserting that to have been its book value at the time, without taking into account the tax fund. His own testimony discloses, however, that the sale was not made on "book value" but that the valuation upon which they

agreed was purely a "trading value" arrived at by the parties from their general knowledge of the value of the assets of the corporation. The sale was made on the 10th day of January. On the 1st day of that month the previous year's business for the corporation had been closed. Expert accountants had audited the year's business. All the debts of the corporation had been paid. The $325,-000.00 had been set aside to take care of the 1918 taxes. All the remainder of the earnings had been distributed in a 20% dividend. The distillery, brands and trade marks of the corporation had been sold. The $800,000.00 capital stock was invested in the remaining assets of the corporation. Upon the reduction of the stock the stockholders were paid the par value of the stock surrendered and aside from the tax fund the capital stock of the corporation as reduced was invested in the remaining assets of the corporation. Those assets largely, if not entirely, consisted of the whiskey owned by the corporation. At any rate, upon the reduction of the capital stock the remaining assets of the corporation, according to the inventory of January 1, 1919, in which its $200,000.00 of capital stock was invested were worth only $200,000.00. Under such facts, and there is no controversy as to them, the book value of the stock would have been par unless something had been added on account of the tax fund and prospective salvage from it. Appellant's testimony that the 20% above par at which the sale was made was added to cover the value of the brands, trade marks and good will of the business. But he is refuted by the fact that in December, 1918, the brands, trade marks and good will of the corporation were sold. Of course, appellant and appellee, with knowledge of the stock of whiskey owned by the corporation and the valuation of same as fixed and carried on the books, could exercise their judgment as to whether it was actually of more or less value than that at which it was carried on the books. If they dealt in that way and varied the value of the stock from par as their judgment led them to believe that the actual value of the whiskey in which the capital stock was invested varied from the valuation of same as fixed by the books of the corporation, they were not dealing on a basis of "book value," but rather from their own judgment as to the value of the stock. We are convinced from the testimony of appellant himself that when he sold his stock he did so not on book value but purely at a trading price arrived at by his own judgment as to

what his interest in the assets of the Old Kentucky Distillery represented by his 875 shares of stock was worth, and that he did not fail to take into account the $325,-000.00 belonging to the corporation that had been set aside to meet the 1918 taxes, but that with respect to it he had no faith that any material reduction would be conceded by the internal revenue department on account of obsolescence. Prior to the time he sold his stock to appellee the corporation had employed and intrusted to the management of the tax accountant the prosecution of the claim for obsolescence as a set-off against the 1918 taxes, and appellant admits that he had full knowledge of that fact. He admits that prior to his sale to appellee the tax accountant had advised that in his opinion he could save at least 75 cents on the dollar from the tax claim on account of obsolescence. The following questions propounded to and answered by appellant refute his claim that he sold the stock to appellee on the basis of the book value:

"Q. Do I understand you to claim that $120.00 was the book value of the stock of the Old Kentucky Distillery as of January 15, 1919? A. Yes, sir; that was my statement. Q. Have you any statement of any kind showing that that was the book value of the stock? A. No, sir; but in my own mind I have figured it out. Q. To enlighten you and to get to some point where our minds meet on it, do you contend that the stock of the Old Kentucky Distillery, as set out on the books, was the basis of your trade with Mr. Sass? A. No, sir; not on the books; I would not say that. Q. Then the basis of your trade with Mr. Sass was not the book value? A. I do not know whether you would call it book value or not. I know this, there is no doubt in my mind, nor was there in the mind of anybody, that the stock was worth more than par after the reductions were made, because in taking our inventory we took very conservative inventories, always at much less value than the whiskey was actually worth. That was done from the beginning. Q. With the explanation I have made as to what the book value is, you can not tell us whether you sold on the book value or not? A. No, sir; I sold it at what I thought the stock was worth. Q. How did you arrive at the value of $120.00? A. Because I thought it was worth $120.00; at least $20.00 per share more than par. Q. In what

way did you arrive at that? A. I couldn't say. You might ask me the price of a piece of real estate and I say it is worth so much money. How do I arrive at it? Because I think so. Q. So that whatever amount was fixed as the value of the good will and as the value of the brands and as a value of the contingent asset was simply a guess of either party to the trade? A. To a certain extent. We could not fix the value exactly. We knew there was value there but there was no way to determine it. Q. That was simply the guess of either party to the trade? A. No, sir; it was not a guess. Q. What was it? A. An opinion. Q. Is not an opinion simply the estimate or guess of each fellow from the facts? A. It was not a guess of mine. Q. How did you arrive at it? A. It was a matter of my own judgment as to what I thought it was worth under all the circumstances.''

To illustrate appellant's mental attitude with reference to the claim being prosecuted to set off against the taxes for 1918 the obsolescence claim and his lack of faith that anything would be realized on that account, we quote the following from appellant's testimony:

''Q. At least fifteen days before the time you sold this stock to Mr. Sass you knew that the claim for obsolescence would be presented? A. Yes, sir. Q. And would reduce the taxes for 1918, A. Yes. Q. There is no mistake about the fact that you knew those facts at the time? A. I was told; I did not know. Q. You didn't have any faith in that claim? A. Not much. I had some, but if you would have had as much experience as I have had in getting money back from the government you wouldn't think you would get any back.''

From the foregoing we conclude that if appellant made any mistake with reference to the tax fund and possible saving from it on account of the obsolescence claim it was not from failure to take it into account in ascertaining the book value of the stock. There is absolutely a total failure of proof that in making the deal the parties figured the value of the stock from a ''book value'' basis. His mistake was merely one of judgment, and his own judgment at that, as to the probable outcome of the obsolescence claim. The aid of the court can not be in-

voked to relieve one from the consequences of such a mistake.

These conclusions settle the other questions raised by appellant.

Judgment affirmed.