## Farmers' Trust Co. of Harrodsburg v. Threlkeld's Administratrix et al.

(Decided Nov. 20, 1934.)

**212**

C. E. RANKIN for appellant.

E. V. PURYEAR and E. H. GAITHER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

Benna L. Willis, on the 15th day of July, 1932, brought an action in the Mercer circuit court against the Farmers' Trust Company to rescind trades she claims she made with it in 1923 and 1924 for the purchase of two notes—one for $3,000, dated February 3, 1923, payable on or before four years after date; the other for $1,500, dated January 7, 1924, due twelve months after date. The notes were executed and delivered by T. M. Horn, secured by a lien on land, and payable to the order of the Farmers' Trust Company.

The administrator of the estate of Louella Threlkeld, on the 18th day of July, 1932, filed an action in the Mercer circuit court against the Farmers' Trust Company to rescind a contract claimed to have been made by Louella Threlkeld with the Farmers' Trust Company for a $3,000 note, dated February 3, 1929, payable on or before four years after date to the Farmers' Trust Company.

The actions were tried, and have been appealed, as one. We shall therefore dispose of them in one opinion.

It is charged in the petitions that the Farmers' Trust Company is an ancillary corporation of the Mercer National Bank of Harrodsburg, Ky.; both owned by the same stockholders, managed by the same board of directors and officers.

It is charged that, at the time the notes were purchased of the Farmers' Trust Company, Horn, the maker of the notes, was insolvent, and that the land on which there were mortgages to secure the notes was subject to prior and outstanding liens, and that the notes, respectively, purchased by them and secured by the mortgages, "were of doubtful value," all of which were known to the Farmers' Trust Company, and that for these reasons it desired to get rid of the notes.

Benna L. Willis, in her petition, charges that, at the time she acquired the two notes, the trust company assured her "each of them was good," and "each a safe investment"; that she was a customer of the bank which was associated with the trust company and had her money on deposit in it at the time she purchased them, "and thereafter, for a number of years," the interest was collected or pretended to be collected, on her notes by the bank and trust company, and credits therefor indorsed on the notes, when notice would be given to her that interest had been paid and placed to her credit in the bank, subject to her check; that a relation of trust and confidence existed between her and the Farmers' Trust Company, and she wholly relied upon it in the purchasing the notes as investments, and it assumed and undertook to make investments for her; it knew Horn, the maker of the notes, the land on which the mortgages were to secure them, the indebtedness of Horn, and "of his doubtful and precarious financial condition." She charges that the Farmers' Trust Company failed, "by fraud or mistake," to indorse the notes. She alleges on account of the fraud of the trust company and of her trust in, and reliance upon, it, she was thereby lulled into a sense of security, and did not discover that its representations and statements respecting the notes were falsely and fraudulently made until about three months next before the filing of her action; that the Farmers' Trust Company assumed to, and did, act for her, in collecting the interest, and so did in order

to cause her not to discover its representations respecting the notes were false and fraudulent until the default in 1932 of payment of the interest on the notes; that until that time the Farmers' Trust Company had complete and sole control of collecting the interest on the notes and placing the same to her credit in bank.

The administrator of Threlkeld's estate, for cause of action, charges that a relation of trust and confidence existed between Louella Threlkeld and the trust company, and at its will it invested and reinvested her estate for her, and she relied entirely upon it in the management of her estate, and it undertook to make investments for her, and, having the $3,000 note of doubtful value, fraudulently, and with the purpose and design to relief itself of possible loss thereon, undertook to sell it to her, and thereafter from time to time collected interest theron for her and placed same to her credit in the Mercer National Bank of Harrodsburg, and continued so to do up until the death of Louella Threlkeld.

It is charged that neither Louella Thelkeld nor her administrator had possession of the note at any time, but the same was continuously in the possession of the Farmers' Trust Company. This note was not indorsed by the Farmers' Trust Company, and it is charged that the so transferring the same was a fraud on the rights of Louella Threlkeld.

Benna L. Willis and the administrator of Threlkeld pray in the alternative that the contract of purchaser of the notes be rescinded, or that the Farmers' Trust Company be required to indorse them, its liability as an indorser to begin with the indorsement.

Issues were formed by appropriate pleadings and on the evidence of the parties, on a trial before the court without the intervention of a jury, judgment was rendered for the amount of the notes in favor of the respective parties, less certain credits. It appears that the mortgaged land was sold and the $3,000 note held by Benna L. Willis credited by a portion of the proceeds.

The Mercer National Bank and the Farmers' Trust Company are owned by the same stockholders, and their affairs and business are conducted by the same board of directors and officers. These facts within themselves do not destroy their separate corporate identity, nor create the relationship of principal and agent or repre-

sentation between the two, or render the one liable for the contracts and obligations of the other.

We have held in a number of cases, "that where one corporation owns another, or another is merged in it, and the second corporation is only a name for the first, a judgment against the second may be enforced against the first." Harlan, etc., Co. v. Eastern Construction Co., 254 Ky. 135, 71 S. W. (2d) 24, 29.

Neither of these actions is to recover of the bank a debt, or to enforce against it an obligation, of the Farmers' Trust Company; nor to recover of the Farmers' Trust Company on a debt or compel performance of a contract, of the Mercer National Bank. It is distinctly charged in the action of Willis and also in that of Threlkeld that the notes involved were acquired from the Farmers' Trust Company; the notes on their face are payable to it. To escape its liabilities, the Farmers' Trust Company presents, among others, the defense that, at the time Willis and Threlkeld assert they acquired title to the notes, they were owned and sold to them by the Mercer National Bank. It follows that, if they had knowledge thereof at the time and if the evidence sustains these allegations, then whatever causes of action accrued in favor of Willis and Threlkeld, the same were against the Mercer National Bank. The burden of proof rests upon the Farmers' Trust Company to establish the Mercer National Bank's ownership at the time the notes were purchased by them and knowledge thereof on the part of Willis and Threlkeld. Willis testifies unequivocally that, in acquiring title and possession of her notes, she dealt with the Farmers' Trust Company by and through its officers in charge of its business. The fact the notes are payable on their face to the Farmers' Trust Company corroborates her testimony in this respect.

True it is that J. E. Stagg, an officer of the trust company, testifies contrariwise. Without giving weight to the judgment of the chancellor, we entertain no doubt that his finding of facts as to this issue is supported by the evidence.

A review for ourselves of the testimony convinces us that, when testifying, Stagg was more actuated by an impelling desire to protect the Farmers' Trust Company at all hazards against the claims of Willis and Threlkeld's estate than by a desire and willingness to

disclose the truth. Plainly, his testimony is evasive and extravagant and is not worthy to be permitted to overcome the apparent candidness, fairness, honesty, and truth of that of Benna L. Willis. It is not necessary to be decided whether the Farmers' Trust Company should be permitted to dispute whatever liability arises from the face of the notes even if the title to them was in the Mercer National Bank by a transfer, without indorsement, under section 3720b-49, Ky. Stats., without notice to Willis and Threlkeld's estate at the time of their respective purchase of the notes.

The trust company argues ''no fraud was practiced on the purchasers of the notes. They were only statements of opinion as to value. Appellees were not injured by fraud of anyone, but by the distressing depreciation in the value of farm lands and agricultural products. * * * The effort here is to make it (the trust company) liable not for the effects of fraud, but for the effects of the depression under the guise of fraud. Whether relief is sought for fraud or the liability of an endorser, appellees are barred by the five year statute.'' They ''were charged with knowledge of what the public records disclose and with knowledge of what they could have learned from a reasonable investigation; therefore, there was nothing to prolong the statutory period. Nothing done by the maker will toll the bar of the statute as to the endorser. There is no showing of any obstruction to bringing the action which could affect appellees' rights. The laches of appellees bars any right they may have had against the trust company.''

These questions must be determined also on the developed facts.

Benna L. Willis testifies that she went to the Mercer National Bank and found J. E. Stagg, who was at that time secretary-treasurer of the Farmers' Trust Company, at his desk; she imparted to him the information she had $3,000 in cash and wanted to invest it in a ''good note,'' and asked him ''what did he have''; ''he ran through a little receptacle—a little box affair— in which he had a lot of notes, and took out the $3,000.00 note.'' He handed me the note and said: 'Here is a note' * * *'' ''He said it was secured by a mortgage.'' She claims that she purchased the $1,500 note from Bush W. Allin who was at that time an officer of the Mercer National Bank and also of the Farmers' Trust

Company. She narrates a conversation with Allin, in substance, the conversation she had with Stagg at the time she purchased the $3,000 note.

It is substantially admitted that after she purchased the $3,000 and the $1,500 notes, the officers of the bank and the trust company, without even a suggestion from her proceeded to collect annually and place in bank to her credit the interest on the notes; they would notify her and she would go to the bank and trust company with the notes and some one of the officers would indorse thereon the interest payments. It is undenied that Horn, the maker of the notes, was financially unable to pay the interest, and the officers of the two corporations, to enable him to do so, annually, without her knowledge, arranged the money for him with which to pay the interest, by taking a mortgage on crops and other personal property to secure the bank in the payment of the money which it would advance Horn. The $1,500 note was executed for the purpose of taking care of the interest on the four $3,000 notes of which the $3,000 note of Willis was one. It was secured by a mortgage on the land subject to the mortgage which secured the four $3,000 notes and further secured by a second mortgage on another tract of land.

It is true that it is the duty of a party to a contract who desires to rescind it to exercise promptly his right of election to rescind for fraud and misrepresentations as soon as he obtains knowledge thereof, whether the contract was an executed or an executory one. Rescission is a remedy awarded only to the diligent. Dolle v. Melrose Properties, etc., 252 Ky. 482, 67 S. W. (2d) 706.

In McKenzie v. Eschmann's Ex'rs, 174 Ky. 450, 192 S. W. 521, 523, this principle was stated:

"It is the rule that a party to a contract obtained by fraud has but one election to repudiate or rescind the same. If he once determines his election, it is determined forever. Hence, if it is shown that he has, at any time after knowledge of the fraud, either by express words or by unequivocal acts, affirmed the contract, his election is irrevocable. * * * Hartford Life Ins. Co. v. Hanlon, 139 Ky. 346, 104 S. W. 729, 31 Ky. Law Rep. 990; Smith v. Lewisport Bank, 85 S. W. 219, 27 Ky. Law Rep. 406."

This principle was quoted with approval in Cox v. Riggins, 223 Ky. 510, 4 S. W. (2d) 403.

It is a settled rule that "mere trade talk" or "commendation, or even false representation by the seller of stock as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no legal effect on the rights of the contracting parties, even when made with the intention to deceive." Kentucky Election Development Company's Receiver et al. v. Head, 252 Ky. 656, 68 S W. (2d) 1, 3.

In McGuffin v. Smith et al., 215 Ky. 606, 286 S. W. 884, 886, we said:

> "That is true as to value, but not as to facts on which to base an estimate of value, where the one claiming to be deceived is not shown to have at hand any reasonably available means of determining the truth of representations made to him about those facts."

Rescission is not a vent for the escape from a bad bargain. The aid of the court cannot be invoked to relieve one from the consequences of a bargain. O. H. Irvine v. Old Kentucky Distillery, etc., 208 Ky. 414, 271 S. W. 577.

Neither law nor equity will afford relief where the parties stand upon an equal footing or where the subject-matter of dispute is equally known to them; and, if one trusts to representations, not calculated to impress a person of ordinary prudence, but neglects the means of information within easy reach, he should suffer the consequences. McCaw v. O'Malley, 298 Mo. 401, 249 S. W. 41. But such rule has no application where a distinct and specific representation is made to be acted upon for the purpose of inducing action, and which has adduced action. Cantley, Com'r of Finance v. Plattner et al. (Mo. App.) 67 S. W. (2d) 125.

> "We might add here that the general doctrine laid down in the textbooks as elementary, is, that doctrine of notice and means of knowledge, have no application where distinct and positive representations of fact have been made, have been relied upon and have induced action."

Kerr on Fraud & Mistake, pages 80, 81; Judd v. Walker, 215 Mo. 312, 114 S. W. 979. C. J. Vol. 20, p. 1144, under the head of "Fraud and Deceit," makes this statement:

"The tendency of modern days is not to extend, but to restrict the rule requiring diligence, and a similar rule, such as caveat emptor, and the rule granting an immunity from the dealer's talk and should deem the falsehood of the fraud feasor rather than the credulity of his victim."

Monsanto Chemical Works v. American Zinc, Lead & Smelting Co. (Mo. Sup.) 253 S. W. 1006.

Stagg testifies that it was an inflexible rule of the trust company not to indorse a note it sold and delivered to a purchaser, and this rule was based upon the advice of counsel that, if it sold and delivered a note without indorsing it, its liability thereon ceased at the end of five years. He did not disclose to Willis this policy or plan of the trust company; nor did he disclose to her that there was a prior lien on the land covered by the mortgage which he mentioned to her. He withheld from her the fact the four $3,000 notes of which hers was one were renewals of Horn's indebtedness of long standing, and that Horn habitually had failed to meet his obligations. If the Mercer National Bank at that time owned the $3,000 note, he did not so inform her. Knowing that she was relying upon him to deliver to her "a good note," he adroitly evaded telling her the whole truth by merely saying "here is a note"; it is "secured by mortgage." The so failing to disclose material facts and also so causing of a false impression constituted a palpable fraud even though his statement was true as far as it went, since such was a concealment of fact—was a false representation of that which was disclosed as the whole truth.

"A duty to speak may arise from partial disclosure; the speaker being under the duty of saying nothing, or to tell the whole truth. Adkins v. Stewart, 159 Ky. 218, 166 S. W. 984; Hays v. Meyers, 139 Ky. 440, 107 S. W. 287, 32 Ky. Law Rep. 832, 17 L. R. A. (N. S.) 284, 139 Am. St. Rep. 493. * * * A false impression may consist in a concealment of what is true as well as an assertion of what is false. Faris v. Lewis, 2 B. Mon. 375; Singleton's Adm'r v. Kennedy & Co., 9 B. Mon. 222; Crescent Gro. Co. v. Vick [194 Ky. 727, 240 S. W. 388], supra; Weikel v. Sterns, 142 Ky. 513, 134 S. W. 908, 34 L. R. A. (N. S.) 1035; Eversole v. Chandler, 217 Ky. 148, 289 S. W. 215. The suppression of truth is as vicious and disastrous as a false representation.

The motive is the same in either case, and the result should be the same, since it is the intention that constitutes the fraud. Ruffner v. Ridley, 81 Ky. 165; Hays v. Meyers, 139 Ky. 444, 107 S. W. 287, 32 Ky. Law Rep. 832, 17 L. R. A. (N. S.) 284, 139 Am. St. Rep. 493; Taylor v. Bradshaw, 6 T. B. Mon. 145, 17 Am. Dec. 132.'' See Dennis v. Thomson, 240 Ky. 727, 43 S. W. (2d) 18, 23.

These principles apply alike to the statements of Stagg to Benna L. Willis at the time she purchased the $3,000 note, and to the actions and conduct thereafter engaged in, and the course pursued by, the officers of the trust company from that date to the date she discovered for the first time, in 1932, that the $3,000 note had been sold and delivered to her by fraud and misrepresentation, within the meaning of these terms as they are defined herein.

In purchasing the $3,000 note and accepting the annual interest payment thereon, Willis and the trust company did not deal at arm's length or on equal footing; she was naive and unsophisticated dependent and inexperienced; they were astute, artful, and experienced. The facts were not equally known to her and them. The plan continuously utilized by them after her acceptance of the note, in their dealing with her in relation thereto, naturally and inevitably lulled her into a false sense of value and safety of her investment.

In the circumstances, the trust company may not invoke the doctrine of laches to prevent her recovery on the note, nor urge that she should have disregarded her unreserved trust in its officers and have examined for herself the record of the mortgage or have initiated other methods or adopted other means to discover the initial or the continuing fraud upon the part of its officers.

It is an accepted rule of pleading, where an action is brought for a relief from fraud more than five years and within ten years after the fraud is committed or false representations are made, the plaintiff must allege facts excusing the delay in bringing his action to state a cause of action. Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078, and cases cited.

In other words, in an action to rescind a contract on the ground of fraud and misrepresentation, the peti-

tion should negative laches. Central Life Ins. Co. v. Taylor, 164 Ky. 844, 176 S. W. 373.

The petition of Willis aptly and appropriately sets forth facts conforming to this elementary rule of pleading and shows that she had not sat supinely by and exercised no diligence to discover the wrong perpetrated upon her by the officers of the trust company, except for the continuous fraud on their part, and that, as soon as her confidence and trust in them were removed, she instituted this action. It was filed within less than ten years after her cause of action accrued. Therefore it is controlled by section 2519 and not section 2515, Ky. Stats.

Respecting so much of her cause of action as seeks a rescission of the contract by which she purchased the $1,500 note, no evidence was offered respecting it as to how, when, or from whom she acquired ownership of it, other than her own testimony. She testified she purchased it from Bush W. Allin, an officer of the trust company, who was of unsound mind at the time she testified. Exceptions to her testimony concerning her purchase of the $1,500 note from Allin, were properly sustained by the court. See subsection 5 of section 606, the Civil Code of Practice. With her testimony as it concerns the purchase of the $1,500 note from Allin so eliminated, there is a failure of proof as to it. Excepting that of J. E. Stagg, there is no verbal testimony showing any dealings or transactions of Louella Threlkeld with the Farmers' Trust Company. He declares Bush W. Allin had been acting as her agent for a period of ten years, which is entirely insufficient to sustain the allegations of her petition. There is no evidence showing from whom, when, where, or upon what terms or conditions she acquired ownership or the right of possession of the $3,000 note for which judgment was rendered in her estate's favor. There is likewise an absence of evidence tending to show the Farmers' Trust Company at any time acted as her agent in investing her money, or in purchasing or acquiring notes for her. The record thus appearing convinces us the court erred in rendering a judgment in favor of Benna L. Willis for the $1,500 and in favor of the estate of Louella Threlkeld for the $3,000 note.

The parties, in their brief, debate the right of Willis and the estate of Threlkeld to require the Farm-

ers' Trust Company to indorse the notes to Willis and Threlkeld's estate, as required by section 3720b-49, Ky. Stat. It is unnecessary to determine whether it was their duty to demand, under this section, the indorsement of the notes before maturity, or within five years thereafter, or at all. For all we know, Willis (without her testimony) accepted the $1,500 note and Threlkeld accepted the $3,000 note upon an expressed agreement they were not to be indorsed at all. Without some evidence bearing on this topic we are not authorized to indulge in conjecture or surmise and decree the indorsement of them by the trust company.

We may add, since the right to require an indorsement under this section is a creature of the statute, and it being admitted their purchases of the notes occurred nearly ten years before the institution of the action, the five-year statute of limitation, provided by section 2515, Ky. Stats., in any event, controls their right to compel indorsement of the notes.

Wherefore, the judgment is affirmed as to the Willis $3,000 note and reversed as to the $1,500 note, and reversed as to the Threlkeld $3,000 note, with directions to dismiss the petitions as to them and for proceedings consistent with this opinion: the Farmers' Trust Company and the Threlkeld estate each will pay one-half the cost of this appeal.

The whole court sitting.