KELLER, J.,
DISSENTING:
I respectfully dissent because I believe the majority has erred in three ways: (1) the majority ignores the trial court’s findings of fact; (2) the majority’s decision implicitly gives effect to common law marriage in violation of our case law stating that such marriages are against public policy; and (3) the trial court, the majority, and Daniel Paisley improperly analyze this case as either a contract, family law, or partnership case, when it is plainly and simply a property case. I address each of these in turn below.
I. Factual Findings
I believe the majority has ignored the trial judge’s findings qf fact. As noted in the majority opinion, the trial court’s findings of fact “shall not be set aside.unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to- judge the credibility of the witnesses.” .CR 52,01. Furthermore, “[i]f the trial judge’s findings of fact in the underlying action are not clearly erroneous, ,i.e., are supported by substantial evidence, then the appellate court’s role is confined to determining whether those facts support the trial judge’s legal conclusion.” Commonwealth v. Deloney, 20 S.W.3d 471, 473-74 (Ky. 2000). While appellate review of legal determinations and conclusions is de novo, Sawyer v. Beller, 384 S.W.3d 107, 110 (Ky. 2012), the factual determinations should remain undisturbed.
The trial court made the requisite findings of fact: the parties were in a relationship and wanted to have a home together; the parties each contributed differing amounts toward the home, at different times, throughout the relationship; the parties initially deeded the property in Daniel’s name because Anne’s divorce was not yet final; upon Anne’s divorce, Daniel transferred the property into both parties’ names joint with right of survivorship; and both parties testified that they trusted each other and never had any agreement about what would happen if they separated. Based upon the above findings, the trial court found that there was no agreement between the parties, written or oral, relating to the property.
As the Court of Appeals held and the majority stated, the trial court’s finding— that the couple had no agreement about what would happen to the property if their relationship ended — is supported by substantial evidence in the form of the parties’ own testimony, and, consequently,. should not be disturbed on appeal. I agree.
Further,, the trial court was presented with evidence showing that Daniel and Anne had contributed differing amounts to the property throughout their fifteen-year relationship. However, the majority fails to note that Anne offered to sell her UPS stock to contribute to the home, but Daniel *529 told her not to do that. The majority further fails to recognize that Anne did not accept a salary for her. work in- Daniel’s business. As noted above, this Court should not decide which f$cts- ,are credible and I believe the majority has overstepped its bounds by doing so. I expound on these facts below.
II. Common Law Marriage
The majority’s decision herein implicitly gives effect to common law marriage. Daniel and Anne had been in a relationship for fifteen years and may have appeared like a married couple. However, the parties’ quasi-marriage is not endorsed by this Commonwealth. It is well settled in Kentucky that there must be a marriage in fact, and common-law marriages are not recognized as valid. McDaniel v. McDaniel, 212 Ky. 833, 280 S.W. 145, 146 (1926). While Kentucky courts recognize rights and obligations attendant to a legally valid civil marriage, they do not extend such marital rights and obligations to' a non-marital relationship no matter how closely it resembles a marriage.
Our law providing for how the property of a married couple is to be distributed following their separation is well-developed.* Had Daniel and Anne been married, division of property would be governed by KRS 403.190, and the court would identify marital and non-marital property, with Daniel and Anne each receiving their non-marital property before dividing the marital property in an equitable fashion. Because Daniél and Anne were not married, the provisions of KRS 403 do riot apply. Yet the majority is so focused on ensuring Daniel receives a “fair” and “equitable” distribution that they nonetheless apply the equitable rules inherent in KRS 403. With its opinion, the majority is reinstitut-ing “by judicial fiat common law marriage which by expressed public policy is not recognized” Murphy v. Bowen, 756 S.W.2d 149, 150 (Ky. App. 1988) (citing KRS 402.020(3)).
The United States Súpreme Court has recognized a fundamental right to marriage. Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967) (citing Skinner v. State of Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)) (Marriage is one of the ‘basic civil rights of man,’ fundamental to our very existence and survival.) There is a sanctity in that right and, therefore, it is unsettling that the majority has implicitly extended the equitable concepts of the Commonwealth’s marriage laws to this case. Individuals are free to marry or co-habitate as they wish, but when parties choose the latter they cannot come to the courts asking for the application of the equitable notions of family law to resolve their conflicts. If the General Assembly wanted to recognize common law marriage, perhaps it would have done so sometime in the past 200 years. In any event, common Jaw marriage remains unrecognized and it is not up to this Court to de facto recognize it in this case.
III. Improper Analysis
The trial court, Daniel, and the majority improperly analyze this case as if it were either a contract, partnership, or a family law case. However, this matter emanated as a civil action in the Fayette Circuit Court, general civil division and is a property case.
A. Contract Case.
There was no contract between the parties. The only written documents pertaining to the parties’ relationship are the mortgages and the deed. While the majority would delve into the parties’ intent following the deterioration of the relationship, that analysis is irrelevant to the parties’ conduct at the time they became joint tenants. Absent any documentation *530 or agreement to the contrary, the deed is paramount; therefore, the trial court acted appropriately by finding, based on the joint tenancy deed, that each tenant was entitled to equal proceeds from the sale of the property.
That is not to say that Daniel and Anne were not free to contract as they wished. For example, Daniel and Anne could have executed a cohabitation agreement to govern distribution of their property while unmarried. Had they chosen to contract, this Court could protect neither Daniel nor Anne from making a bad bargain. Farmers’ Trust Co. of Harrordsburg v. Threlkeld’s Adm’x., 257 Ky. 211, 77 S.W.2d 616, 620 (1934) (citing O.H. Irvine v. Old Kentucky Distillery, etc., 208 Ky. 414, 271 S.W. 577 (1924)). By the same token, this Court should not protect Daniel from failing to make a bargain at all.
B. Partnership Case.
Daniel argued, and both parties briefed the issue, that this case should, or should not be, decided under partnership law. While the majority opinion does not specifically address this argument, I feel compelled to do so. KRS 362.175 defines a partnership as “an association of two (2) or more persons to carry on as co-owners a business for profit.” First, there was no express partnership agreement between Daniel and Anne nor any evidence of an implied partnership. Second, KRS 362.180(2) states that “joint tenancy ... dqes not of itself establish a partnership .... ” “The law of partnerships does not apply to a living arrangement, although it could apply to a business carried on by persons who lived together.” L. Graham & J. Keller, 15 Kentucky Practice Series, Domestic Relations Law § 2:13 (2016) (internal citations omitted).
It behooves me to point out that the existence of a partnership must be established before a court will look at distribution of partnership property. Because there is no evidence of any kind of partnership between Daniel and Anne, we cannot analyze division of the proceeds under a partnership theory to arrive at a more equitable outcome for Daniel.
C. Property Case.
As set forth above, this case is not a family law, contract, or partnership case. In fact, this case is simply a property case and should be resolved based solely on property law. Our jurisprudence has been couched on the presumption that joint tenancy creates “equal rights” in title among owners. See Stambaugh v. Stambaugh, 288 Ky. 491, 156 S.W.2d 827, 831 (1941). As we noted in Rakhman v. Zusstone, “[I]t has long been the law in Kentucky that ‘[r]ec-ord title or legal title is an indicia sufficient to raise a presumption of true ownership’.” 957 S.W.2d 241, 244 (Ky. 1997) (quoting Tharp v. Security Ins. Co. of New Haven, Ky., 405 S.W.2d 760, 766 (1966)). It is undisputed that Daniel and Anne ultimately took title to the property through a deed identifying the parties as joint tenants with right of survivorship; thus, there was a presumption that each tenant owned a yet undivided, but equal, interest in the property. See City of Louisville v. Coleburne, 108 Ky. 420, 56 S.W. 681, 682 (1900) (“In order to constitute an estate in joint tenancy, the tenants thereof must have one and the same interest, arising by the same conveyance, commencing at the same time, and held by one and the same undivided possession.”)
Although the shares of joint tenants are presumed to be equal, this presumption is rebuttable. 48A C.J.S. Joint Tenancy § 28. “Generally, the mere fact of a greater contribution to the purchase price by one joint tenant will not overcome the presumption of equality.” Id. (internal citations omitted). “The beneficial interest of a joint *531 tenant who furnishes nothing for the purchase of the property, likewise, is generally precisely the same as that of his or her co-owner who furnishes all of the consideration for the purchase of the jointly held property.” Id. (internal citations omitted).
In interpreting a deed, we look to the intention of the parties, “gathered from the four corners of the instrument.” Smith v. Vest, 265 S.W.3d 246, 249 (Ky. App. 2007) (citing Phelps v. Sledd, 479 S.W.2d 894, 896 (Ky. 1972) (citations omitted)). We will “not substitute what grantor may have intended to say for what was said” in the deed itself. Id. (citing Phelps, 479 S.W.2d at 896). We must begin, therefore, with the premise that the joint tenancy deed granted Daniel and Anne equal ownership in the property.
The Court of Appeals and the majority cite two cases for the proposition that one joint tenant who pays a lien or mortgage is entitled to contribution from the other joint tenant. Petty v. Petty, 220 Ky. 569, 295 S.W.863, 864 (1927); Larmon v. Larmon, 173 Ky. 477, 191 S.W. 110, 113 (1917). These cases are not dispositive for Daniel and Anne. Petty involves collection of a loan against a surviving joint tenant while Larmon dealt with contributions for repairs made by a life tenant. I cannot agree with the majority that these cases demand distribution of the proceeds according to Daniel’s and Anne’s contributions to the property. “If the parties are actually making unequal contributions to the property, they may still take a deed as joint tenants, but they must also have a separate contract that memorializes their agreement to take account of actual contribution if the relationship dissolves and one party wishes to buy out the other.” L. Graham & J. Keller, 15 Kentucky Practice Series, Domestic Relations Law § 2:13 (2016). This applies directly to Daniel and Anne.
As stated above, the trial court found that the parties had no agreement as to how the property would be divided should their relationship end. The trial court further found that the parties had contributed unequal amounts toward the property throughout the fifteen-year relationship. In fact, the evidence shows that Daniel never asked Anne to contribute any more to the property than her initial $120,000, and Anne worked for Daniel’s business without á salary for years. These facts were significant to the trial court’s finding that Daniel had not rebutted the presumption of an equal distribution. I agree with the trial court’s decision and it should not be disturbed.
Had the parties’ relationship ended after Anne made her $ 120,000 down payment, but prior to the deed being put in both parties joint names, Anne would have had no recourse within the above-cited law, no matter how “unfair” a result it may seem. Anne’s counsel concedes this. The same must be said for Daniel now. To hold otherwise would completely eviscerate the principles of property law and give an effect to joint tenancy that was never intended.
For the foregoing reasons, I respectfully dissent.
Hughes, J., joins.