CORRECTED: AUGUST 31, 2017
RENDERED: AUGUST 24, 2017
TO BE PUBLISHED



$Supreme Court of Kentucky$ FINAL

2016-SC-000092-DG DATE 9/14/17 Kim Radmon, DC

ANNE M. TALLEY                                        APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-00590
FAYETTE CIRCUIT COURT NO. 13-CI-01952

DANIEL J. PAISLEY                                      APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**AFFIRMING**

A cotenant of real property, including one who holds as a joint tenant with right of survivorship, is entitled to contribution from other cotenants with respect to his or her payment of any liens, taxes or other encumbrances on the property. Following such contribution, any proceeds to the property are shared by the cotenants in proportion to their respective ownership interest in the property. The issue we resolve in this case is whether the Court of Appeals erred in reversing the Fayette Circuit Court's judgment that Daniel Paisley and Anne Talley were to share equally in the proceeds of sale of their jointly owned real property based on their respective ownership percentages and irrespective of Paisley's discharge of mortgage liens encumbering the property. We hold

that the Court of Appeals did not err and therefore remand this matter to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND.

Paisley and Talley never married, but cohabitated for fifteen years. In 2004, they purchased a tract of land on Lakewood Drive in Lexington in order to build a residence together. At that time, Talley was married to someone else. Paisley was divorced and owned another residence in his own name. Talley also owned a residence, which she sold, and used the proceeds from that sale ($120,000) as the down payment for the Lakewood Drive property. The parties initially placed the Lakewood Drive property in Paisley's name because Talley was still legally married. Talley and her husband divorced in October 2006.

Soon after that divorce, the parties placed the Lakewood Drive property in their joint names with right of survivorship. At that point, according to Paisley, he had paid $109,942 in construction and loan costs, and Talley had paid the initial down payment on the property. Also in November 2006, two mortgages were taken out on the property, one in the amount of $225,000 and the other $250,000. Talley and Paisley were co-mortgagors and co-makers of the notes.

Paisley sold his residence in July 2007, and used $200,000 of the proceeds to pay down the $250,000 mortgage on the Lakewood residence. In December 2009, he paid off the balance of that mortgage. He also paid $19,119 down on the $225,000 mortgage, and $3,052 to close a construction loan in November 2006. From 2007 until March 2014, Paisley made all the

2

mortgage payments in full. According to Paisley, he never demanded payment from Talley because he believed she would have the funds to contribute her share to the residence after her former husband paid her $350,000 as part of their divorce settlement.

Paisley and Talley's relationship eventually ended. Paisley moved out of the Lakewood residence in January 2013, although he continued to make the mortgage and insurance payments. He filed a complaint several months later, pursuant to KRS 389A.030, seeking to sell the residence and divide the equity in proportion to the parties' contributions, and specifying that Talley should be solely responsible for the expenses associated with the house while she resided there alone.

The house eventually sold for $715,000. The net equity in the residence was $477,397. Paisley proposed that these proceeds be divided based on the parties' proportionate contribution and to reflect the fact that he had contributed more to the residence. By his calculation, Talley had contributed $120,000 and he had contributed $383,921. Therefore, Paisley proposed to receive $369,500 from the proceeds, and for Talley to receive $106,500.[1]

Following a bench trial, the trial court found that the parties did not have an agreement regarding disposition of the property in the event their relationship ended, and ordered the equity in the residence to be divided equally between them. The trial court found the evidence insufficient to rebut

---

[1] The parties' total contribution was $503,921. Of this Paisley contributed 76.2% (383,921/503,921), and Talley contributed 23.8% (120,000/503,921).

3

a presumption of equality and accordingly divided the sale proceeds equally. The trial court largely based its decision on its finding that the parties never had an agreement, written or verbal, about division of the Lakewood property if their relationship ended. The court emphasized that if it had found that such an agreement existed and considered the contributions of the parties as Paisley requested, it would be required to consider both parties' contributions relative to the specific facts of this case. The trial court cited no case law in support of its terse legal conclusion.

Paisley appealed to the Court of Appeals, which reversed the trial court's decision. The Court of Appeals declined to disturb the trial court's finding that the parties had no agreement about what would happen to the property if their relationship ended, since the parties' testimony supported that finding. However, it held that as a matter of law, Paisley was entitled to be proportionately reimbursed by Talley for payments he made during their joint tenancy. As a result, the Court of Appeals remanded the case to the trial court to determine the amount to which he is entitled. Talley petitioned this Court for discretionary review, which we granted.

## ANALYSIS.

In an appeal from a bench trial without a jury, the trial court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to judge the credibility of the

4

witnesses." CR[2] 52.01. "If the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.*, are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Commonwealth v. Deloney*, 20 S.W.3d 471, 473 – 74 (Ky. 2000). However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is de novo. *Sawyer v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012).

Property held jointly with right of survivorship "is an estate held by two or more people who (in the case where the estate is held by only two) are not husband and wife. Each is jointly entitled to the enjoyment of the estate so long as all live; however, the interest of a joint tenant, at his or her death, passes to the survivor." *Sanderson v. Saxon*, 834 S.W.2d 676, 678 (Ky. 1992) (citations omitted). With respect to the sale or division of property held in joint tenancy, KRS[3] 389A.030(4) provides that "[i]f a sale of all or any part of the real estate shall be ordered, the [trial] court shall refer the matter to the master commissioner or appoint a commissioner to conduct a public sale and convey the property upon terms of sale and disposition of the net proceeds as may have been determined by the court."

Talley argues that property held in joint tenancy is presumed to be held equally and, therefore, equal division of the sale proceeds is appropriate in this

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statutes.

instance. She asserts that to hold otherwise would afford those holding property jointly with the same rights as those vested in married couples with respect to considering contribution in the division of proceeds from the sale of jointly-owned property, thereby destroying the joint tenancy presumption of equality. Talley further asserts that even if Paisley could rebut the presumption of equality by clear and convincing evidence, he waived any right to contribution or intended his contributions to Talley to be a gift. She maintains that since 2007, Paisley knew he had invested more than she had in the residence, but nonetheless agreed to continue to hold the property jointly, evidenced by the parties' reaffirmation of their joint tenancy agreement in 2012 when they refinanced their home. Talley argues the Court of Appeals neglected to consider defenses to contribution such as waiver and gift.

Under Kentucky law, joint tenants are entitled to proportionate reimbursement for the payment of liens and other encumbrances on the property. The general rule is that "one joint tenant is entitled to contribution from his cotenant for liens and encumbrances paid by him, including mortgages, taxes, and ground rent." *Larmon v. Larmon*, 173 Ky. 477, 191 S.W. 110, 113 (1917) (footnotes omitted).

> [O]ne who pays a joint debt is entitled to contribution from his co-obligors and . . . a tenant who relieves common property from a lien is subrogated to the lien on his cotenant's share for the excess he has paid over his proportionate share. We think this rule applies with equal force to a joint tenancy with survivorship. . . . as between each other each was liable for one-half of the indebtedness, and if either paid the entire lien indebtedness, he was entitled to contribution to the extent of one-half of the indebtedness as against the

6

> other, and was subrogated to the original lien upon his cotenant's interest to that extent as in other cases of cotenancy.

*Petty v. Petty*, 220 Ky. 569, 295 S.W.863, 864 (1927).

Furthermore, an agreement between the joint tenants for this type of reimbursement is not required:

> Equitable contribution between co-owners of undivided interests in real estate has often been recognized and enforced, even without a contract between the parties to that effect. If one such joint owner at his own expense discharges a lien upon the joint property, or is compelled, in order to protect his own interest therein, to pay out his own money to acquire outstanding title for the common benefit, he may enforce contribution in equity from the other joint owners in proportion to their interests.

*Bishop v. Wolford*, 218 Ky. 657, 291 S.W. 1049, 1052 (1927) (citations omitted).

The record reflects that Paisley did not expressly or implicitly waive any right to contribution, or intend his contributions to be a gift to Talley. While at no point did the parties agree, expressly or otherwise, as to division of the proceeds from the sale of the property, this oversight appears due to the fact that the parties did not anticipate or contemplate the demise of their relationship or the division of the Lakewood property at all.

Contrary to Anne's assertion, our holding in this case does not disrupt longstanding legal principles with respect to the definition of joint tenancy with right of survivorship. That definition remains intact. However, with respect to the division of proceeds from the sale of jointly-held property when the cotenants have no agreement regarding how sale proceeds would be split, we hold that, to the extent one tenant contributed more than his or her half to the

7

discharge of encumbrances, liens, taxes, that tenant is entitled to contribution from the other.

## CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals and remand this case to the Fayette Circuit Court. On remand, the trial court is to make a determination as to that amount which will equalize the respective contributions of the parties to the property. Once the parties' respective contributions to the property have been equalized, the balance of the proceeds from the sale of the property are to be split equally, 50% to each. [4]

All sitting. Minton, C.J.; Cunningham, VanMeter, Venters and Wright, JJ., concur. Keller, J., dissents by separate opinion in which Hughes, J., joins.

KELLER, J., DISSENTING: I respectfully dissent because I believe the majority has erred in three ways: (1) the majority ignores the trial court's findings of fact; (2) the majority's decision implicitly gives effect to common law marriage in violation of our case law stating that such marriages are against public policy; and (3) the trial court, the majority, and Daniel Paisley improperly analyze this case as either a contract, family law, or partnership case, when it is plainly and simply a property case. I address each of these in turn below.

---

[4] For example, using Paisley's numbers for purpose of illustration, if the trial court determines that Paisley contributed $263,921 more than Talley ($383,921 - $120,000 = $263,921), then an out-of-pocket payment from Talley to Paisley of one-half of this amount, $131,960.50, equalizes the parties' contribution. The net sale proceeds would then be split equally. Absent an out-of-pocket payment to equalize, Paisley would be entitled to the first $263,921 from the net sale proceeds, with the balance then being split equally between the parties.

8

## I.   Factual Findings

I believe the majority has ignored the trial judge's findings of fact. As noted in the majority opinion, the trial court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to judge the credibility of the witnesses." CR 52.01. Furthermore, "[i]f the trial judge's findings of fact in the underlying action are not clearly erroneous, i.e., are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000). While appellate review of legal determinations and conclusions is *de novo, Sawyer v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012), the factual determinations should remain undisturbed.

The trial court made the requisite findings of fact:  the parties were in a relationship and wanted to have a home together; the parties each contributed differing amounts toward the home, at different times, throughout the relationship; the parties initially deeded the property in Daniel's name because Anne's divorce was not yet final; upon Anne's divorce, Daniel transferred the property into both parties' names joint with right of survivorship; and both parties testified that they trusted each other and never had any agreement about what would happen if they separated. Based upon the above findings, the trial court found that there was no agreement between the parties, written or oral, relating to the property.

As the Court of Appeals held and the majority stated, the trial court's finding—that the couple had no agreement about what would happen to the property if their relationship ended—is supported by substantial evidence in the form of the parties' own testimony, and, consequently, should not be disturbed on appeal. I agree.

Further, the trial court was presented with evidence showing that Daniel and Anne had contributed differing amounts to the property throughout their fifteen-year relationship. However, the majority fails to note that Anne offered to sell her UPS stock to contribute to the home, but Daniel told her not to do that. The majority further fails to recognize that Anne did not accept a salary for her work in Daniel's business. As noted above, this Court should not decide which facts are credible and I believe the majority has overstepped its bounds by doing so. I expound on these facts below.

## II.    Common Law Marriage

The majority's decision herein implicitly gives effect to common law marriage. Daniel and Anne had been in a relationship for fifteen years and *may have appeared* like a married couple. However, the parties' quasi-marriage is not endorsed by this Commonwealth. It is well settled in Kentucky that there must be a marriage in fact, and common-law marriages are not recognized as valid. *McDaniel v. McDaniel*, 280 S.W. 145, 146 (Ky. 1926). While Kentucky courts recognize rights and obligations attendant to a legally valid civil marriage, they do not extend such marital rights and obligations to a non-marital relationship no matter how closely it resembles a marriage.

Our law providing for how the property of a married couple is to be distributed following their separation is well-developed. Had Daniel and Anne been married, division of property would be governed by KRS 403.190, and the court would identify marital and non-marital property, with Daniel and Anne each receiving their non-marital property before dividing the marital property in an equitable fashion. Because Daniel and Anne were not married, the provisions of KRS 403 do not apply. Yet the majority is so focused on ensuring Daniel receives a "fair" and "equitable" distribution that they nonetheless apply the equitable rules inherent in KRS 403. With its opinion, the majority is reinstituting "by judicial fiat common law marriage which by expressed public policy is not recognized." *Murphy v. Bowen*, 756 S.W.2d 149, 150 (Ky. App. 1988) (citing KRS 402.020(3)).

The United States Supreme Court has recognized a fundamental right to marriage. *Loving v. Virginia*, 87 S.Ct. 1817, 1824 (1967) (citing *Skinner v. State of Oklahoma*, 62 S.Ct. 1110, 1113 (1942)) (Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival.) There is a sanctity in that right and, therefore, it is unsettling that the majority has implicitly extended the equitable concepts of the Commonwealth's marriage laws to this case. Individuals are free to marry or cohabitate as they wish, but when parties choose the latter they cannot come to the courts asking for the application of the equitable notions of family law to resolve their conflicts. If the General Assembly wanted to recognize common law marriage, perhaps it would have done so sometime in the past 200 years. In any event, common

11

law marriage remains unrecognized and it is not up to this Court to *de facto* recognize it in this case.

### III.    Improper Analysis

The trial court, Daniel, and the majority improperly analyze this case as if it were either a contract, partnership, or a family law case. However, this matter emanated as a civil action in the Fayette Circuit Court, general civil division and is a property case.

### A. Contract Case.

There was no contract between the parties. The only written documents pertaining to the parties' relationship are the mortgages and the deed. While the majority would delve into the parties' intent following the deterioration of the relationship, that analysis is irrelevant to the parties' conduct at the time they became joint tenants. Absent any documentation or agreement to the contrary, the deed is paramount; therefore, the trial court acted appropriately by finding, based on the joint tenancy deed, that each tenant was entitled to equal proceeds from the sale of the property.

That is not to say that Daniel and Anne were not free to contract as they wished. For example, Daniel and Anne could have executed a cohabitation agreement to govern distribution of their property while unmarried. Had they chosen to contract, this Court could protect neither Daniel nor Anne from making a bad bargain. *Farmers' Trust Co. of Harrordsburg v. Threlkeld's Adm'x.*, 77 S.W.2d 616, 620 (Ky. 1934) (citing *O.H. Irvine v. Old Kentucky*

*Distillery, etc.*, 271 S.W. 577 (Ky. 1924)). By the same token, this Court should not protect Daniel from failing to make a bargain at all.

## B. Partnership Case.

Daniel argued, and both parties briefed the issue, that this case should, or should not be, decided under partnership law. While the majority opinion does not specifically address this argument, I feel compelled to do so. KRS 362.175 defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit." First, there was no express partnership agreement between Daniel and Anne nor any evidence of an implied partnership. Second, KRS 362.180(2) states that "joint tenancy. . . does not of itself establish a partnership. . . ." "The law of partnerships does not apply to a living arrangement, although it could apply to a business carried on by persons who lived together." L. Graham & J. Keller, 15 Kentucky Practice Series, Domestic Relations Law § 2:13 (2016) (internal citations omitted).

It behooves me to point out that the existence of a partnership must be established before a court will look at distribution of partnership property. Because there is no evidence of any kind of partnership between Daniel and Anne, we cannot analyze division of the proceeds under a partnership theory to arrive at a more equitable outcome for Daniel.

## C. Property Case.

As set forth above, this case is not a family law, contract, or partnership case. In fact, this case is simply a property case and should be resolved based solely on property law. Our jurisprudence has been couched on the presumption that joint tenancy creates "equal rights" in title among owners. *See Stambaugh v. Stambaugh*, 156 S.W.2d 827, 831 (Ky. 1941). As we noted in *Rakhman v. Zusstone*, "[I]t has long been the law in Kentucky that '[r]ecord title or legal title is an indicia sufficient to raise a presumption of true ownership.'" 957 S.W.2d 241, 244 (Ky. 1997) (quoting *Tharp v. Security Ins. Co. of New Haven*, Ky., 405 S.W.2d 760, 765 (1966)). It is undisputed that Daniel and Anne ultimately took title to the property through a deed identifying the parties as joint tenants with right of survivorship; thus, there was a presumption that each tenant owned a yet undivided, but equal, interest in the property. *See City of Louisville v. Coleburne*, 56 S.W. 681, 682 (Ky. 1900) ("In order to constitute an estate in joint tenancy, the tenants thereof must have one and the same interest, arising by the same conveyance, commencing at the same time, and held by one and the same undivided possession.")

Although the shares of joint tenants are presumed to be equal, this presumption is rebuttable. 48A C.J.S. Joint Tenancy § 28. "Generally, the mere fact of a greater contribution to the purchase price by one joint tenant will not overcome the presumption of equality." *Id.* (internal citations omitted). "The beneficial interest of a joint tenant who furnishes nothing for the purchase of the property, likewise, is generally precisely the same as that of his

14

or her co-owner who furnishes all of the consideration for the purchase of the jointly held property." *Id.* (internal citations omitted).

In interpreting a deed, we look to the intention of the parties, "gathered from the four corners of the instrument." *Smith v. Vest*, 265 S.W.3d 246, 249 (Ky. App. 2007) (citing *Phelps v. Sledd*, 479 S.W.2d 894, 896 (Ky. 1972) (citations omitted)). We will "not substitute what grantor may have intended to say for what was said" in the deed itself. *Id.* (citing *Phelps*, 479 S.W.2d at 896). We must begin, therefore, with the premise that the joint tenancy deed granted Daniel and Anne equal ownership in the property.

The Court of Appeals and the majority cite two cases for the proposition that one joint tenant who pays a lien or mortgage is entitled to contribution from the other joint tenant. *Petty v. Petty*, 295 S.W.863, 864 (Ky. 1927); *Larmon v. Larmon*, 191 S.W. 110, 113 (Ky. 1917). These cases are not dispositive for Daniel and Anne. *Petty* involves collection of a loan against a surviving joint tenant while *Larmon* dealt with contributions for repairs made by a life tenant. I cannot agree with the majority that these cases demand distribution of the proceeds according to Daniel's and Anne's contributions to the property. "If the parties are actually making unequal contributions to the property, they may still take a deed as joint tenants, but they must also have a separate contract that memorializes their agreement to take account of actual contribution if the relationship dissolves and one party wishes to buy out the other." L. Graham & J. Keller, 15 Kentucky Practice Series, Domestic Relations Law § 2:13 (2016). This applies directly to Daniel and Anne.

15

As stated above, the trial court found that the parties had no agreement as to how the property would be divided should their relationship end. The trial court further found that the parties had contributed unequal amounts toward the property throughout the fifteen-year relationship. In fact, the evidence shows that Daniel never asked Anne to contribute any more to the property than her initial $120,000, and Anne worked for Daniel's business without a salary for years. These facts were significant to the trial court's finding that Daniel had not rebutted the presumption of an equal distribution. I agree with the trial court's decision and it should not be disturbed.

Had the parties' relationship ended after Anne made her $120,000 down payment, but prior to the deed being put in both parties' joint names, Anne would have had no recourse within the above-cited law, no matter how "unfair" a result it may seem. Anne's counsel concedes this. The same must be said for Daniel now. To hold otherwise would completely eviscerate the principles of property law and give an effect to joint tenancy that was never intended.

For the foregoing reasons, I respectfully dissent.

Hughes, J., joins.

COUNSEL FOR APPELLANT:

Amy Claire Johnson
Anita Mae Britton
Britton Johnson, PLLC


COUNSEL FOR APPELLEE:

Thomas W. Miller
Elizabeth C. Woodford
Anna Leisa Dominick
Miller, Griffin & Marks, P.S.C

# Supreme Court of Kentucky

2016-SC-000092-DG

ANNE M. TALLEY                                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-00590
FAYETTE CIRCUIT COURT NO. 13-CI-01952

DANIEL J. PAISLEY                                                  APPELLEE

## ORDER

On the Court's own motion, this Court hereby modifies the Opinion of the Court by Justice VanMeter rendered August 24, 2017 in the above styled case by the substitution of a new opinion as attached hereto in lieu of the Opinion of the Court as originally entered. Said modification does not affect the holding, and is made only to reflect the incorrect cite error on page 14, line 8 changing "*Tharp v. Security Ins. Co. of New Haven, Ky.*, 202 S.W.2d 999 (Ky. 1947)" to "*Tharp v. Security Ins. Co. of New Haven*, Ky., 405 S.W.2d 760, 765 (1966)."

Entered: August 31, 2017.

_____
CHIEF JUSTICE