**Marla Faye THARP, an Infant, by Leon Tharp, as her next friend, Leon Tharp, Individually, Norma Jean Tharp, Appellants,**

**v.**

**SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT, Appellee.**

Court of Appeals of Kentucky.

June 24, 1966.

Rehearing Denied Sept. 23, 1966.

Robert T. Schneider, Horse Cave, for appellants.

Harold D. Ricketts, Harlin & Orendorf, Bowling Green, for appellee.

WILLIAM BRECKENRIDGE ARDERY, Special Commissioner.

Appellants, plaintiffs in the lower court, brought suit in Barren County against the appellee insurance company to enforce judgments previously returned in their favor against Clinton Arthur Goad for damages resulting from an automobile accident. Goad was the named insured in a "nonowned motor vehicle policy" or "operator's policy" issued to him by appellee pursuant to the provisions of the Kentucky Financial Responsibility Law. The trial court dismissed the action on the grounds that the policy contained an endorsement that its coverage did not apply to any automobile owned by the named insured and that, at the time of the accident in question, the automobile driven by Goad was owned by him within the meaning of Chapter 187 of the Kentucky Revised Statutes.

Goad was convicted of operating a motor vehicle while under the influence of intoxicating beverages and his operating privilege was revoked on October 9, 1958. On July 1, 1959, he made application for an operator's policy of liability insurance under the Kentucky Automobile Assigned Risk Plan.

The application was received by the agent of another insurance company and forwarded by him to the manager of the Kentucky Assigned Risk Plan, Louisville, Kentucky. On July 2, 1959, the risk was assigned to appellee, which issued to Goad its standard operator's policy, containing an endorsement that the insurance coverage in the policy did not apply: "(a) to any automobile owned by the named insured or a member of the same household * * *." The policy period was from July 2, 1959, to July 2, 1960.

On August 3, 1959, appellee filed Kentucky Financial Responsibility Insurance Certificate, SR—22, with the Department of Public Safety, Frankfort, Kentucky. This form certified that there was in force on its effective date, July 2, 1959, a motor vehicle liability policy as defined in Section 21 of the Kentucky Motor Vehicle Safety—Responsibility Act (Kentucky Financial Responsibility Law), which policy had been issued by the appellee to Goad. The insurance coverage, to which certification was thereby made, was bodily injury liability and property damage liability under a nonowned policy or operator's policy.

This coverage, as certified, was in effect from July 2, 1959, to July 2, 1962. On July 2, 1960, and July 2, 1961, upon the payment by Goad to appellee's Connecticut office of the premium required, the policy, together with the endorsement, was renewed and forwarded to Goad through the agent who had presented his application.

On July 5, 1961, while the policy was in effect, pursuant to the requirements of the Kentucky Financial Responsibility Law, Goad negotiated for the purchase of the automobile driven by him at the time of the accident out of which appellants' claims arose. Although he paid the purchase price, at his direction the seller transferred title to Goad's mother, and the automobile was subsequently registered in Kentucky in her name.

On September 16, 1961, Goad collided with an automobile in which appellants were riding. They filed an action against him, of which appellee had adequate notice. However, on the ground of lack of coverage, appellee elected not to defend against their claims.

The Barren Circuit Court adjudged that appellant Leon Tharp recover the sum of $5,294.55, appellant Norma Jean Tharp $500. and Marla Faye Tharp $500. from Goad, each with interest thereon at the rate of 6% per annum from October 1, 1962, until paid, together with costs. Appellants caused an execution to issue from the Barren Circuit Court on their judgments. A return of "no property found" was made by the Sheriff of Monroe County, where Goad resides.

Appellants then instituted their action in the lower court against appellee. On joint motion of the parties it was ordered that the case be submitted for judgment on the pleadings, requests for admissions, proof taken by depositions, and exhibits filed of record, subject to oral objections relating to competency and relevancy.

Appellants complain on appeal that appellee's failure to plead in response to their properly amended complaint within ten days after service of their amended pleading constituted an admission of the allegations contained therein. These allegations set forth a purported estoppel to deny coverage as to Clinton Arthur Goad as of the time of the accident from which their claims arose.

A default under the Rules of Civil Procedure does not operate automatically against the party responsible for it. One seeking to take advantage of an opposing party's omission must take affirmative action thereon. It is then within the discretion of the trial court, guided by the Rules, to determine the effect of the default.

Nothing in the record indicates that appellee's failure to respond to appellants' amended complaint was specifically and affirmatively brought before the trial court. Having failed to present the question in a timely manner, the appellants cannot first raise it on appeal.

Appellants further argue that the trial court erred in ruling that the vehicle driven by Goad at the time of the accident was owned by him within the meaning of the Kentucky Financial Responsibility Law so as to be excluded from coverage under the endorsement to the operator's liability insurance policy issued by the appellee to him. In other words, can an insurer, operating under the provisions of the Kentucky Financial Responsibility Law, set up as a defense a policy provision excluding any automobile owned by the named insured or a member of the same household, as a defense to a direct action against the insurer by one who has obtained a judgment against the insured, and can the insurer escape liability by proof that, although record title is in another, the insured is the true owner of an automobile involved in an accident from whence the judgment derived?

Appellee certified in Form SR—22 that it had issued its policy to Goad as proof of his ability to respond in damages under the Kentucky Financial Responsibility Law. The policy was in effect on the day of the accident and had not been cancelled pursuant to KRS 187.500. The accident occurred within the three-year period, after the original issuance of the policy, during which time KRS 187.570(1) (a) required that proof of financial responsibility be maintained.

It is clear that appellee issued the policy to Goad under the "Assigned Risk Plan." Therefore, the applicable provisions of KRS Chapter 187 are read into and become a part of the policy.

If any of the provisions contained in the policy are contrary to law, the provisions in the law will prevail. The Financial Responsibility Law did not authorize appellee to exclude from the coverage of its policy an automobile owned by a member of its insured's household. That clause is repugnant to the provisions of the law, and as such is void.

KRS 187.490(6) (d) states, "The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of KRS 187.290 to 187.620 shall constitute the entire contract between the parties." KRS 187.490(1)

says, in part, that, "A 'motor vehicle liability policy' as said term is used in KRS 187.-290 to 187.620 shall mean an owner's or an operator's policy of liability insurance * * *." KRS 187.490(3) provides, "Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed on him by law for damages arising out of the use by him of any motor vehicle not owned by him * * *."

KRS 187.290(8) and (9) define "operator" and "owner" as follows:

"(8) 'Operator'—Every person who is in actual physical control of a motor vehicle.

(9) . 'Owner'—A person who holds the legal title of a motor vehicle, or in the event a motor vehicle is a subject of an agreement for the conditional sale or lease thereof with right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of KRS 187.290 to 187.620."

The same statute in sub-section (11) defines proof of financial responsibility as, "Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle * * *."

Words such as owner and ownership are consistently used with reliance upon their assumed concreteness and ability to express in all situations the same concepts. Unfortunately, their apparent synonimity often is illusory.

Legal title, paper title, record title and similar terms are sometimes used to differentiate among various bundles of rights and obligations. On occasion, they may be used as synonyms for each other within the same context. In some instances they may be definitive of a legal relationship between person and property. At other times their vagueness in meaning is illustrated by using them to denominate certain types of indicia of "ownership" in attempting to ascertain the "true owner."

This court has recognized the problem. In Campbell County Bd. of Education v. Boulevard Enterprises, Inc., Ky., 360 S.W. 2d 744, 746, we said:

"The word 'owner' invokes many images. It is elastic and its color changes to match the context. A neat statement of its chameleonic character may be found in Warren v. Lower Creek Drainage District, 316 Ill. 345, 147 N.E. 248, where it is written: 'The word "*owner*" is nomen generalissimum, and its meaning is to be gathered from the connection in which it is used and from the subject-matter to which it is applied, and when used in a statute the obvious nature and purpose of the statute may indicate its meaning.'"

Counsel have cited decisions of this court defining the word "owner" with regard to its technical meaning within the law of real and personal property and within certain regulatory statutes. The concern of the court in this case is to determine what was intended by the legislature by the use of the word "owner" in the Kentucky Financial Responsibility Law.

■ In cases involving policies of voluntary insurance this court has followed the majority rule that, since an injured party generally stands in the shoes of the insured with regard to his rights against the insurer, the right of the injured person to recover against the insurer is dependent upon the terms and limitations of the policy. However, the Financial Responsibility Law is remedial in nature and should be broadly construed.

■ The purpose of the law is fundamentally to provide compensation for in-

nocent persons injured through faulty operation of motor vehicles. The Commonwealth has a valid interest in promoting safety on the highways by protecting the users against financially irresponsible persons, particularly where those persons have previously demonstrated lack of competence and care in the use of the roads.

The legislature has expressed its intent by providing in KRS 187.490 that:

" (6) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(a) The liability of the insurance carrier with respect to the insurance required by KRS 187.290 to 187.620 shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

\* \* \* \* \* \*

(8) Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of KRS 187.290 to 187.620."

The legislature intended that all those using the highways of this Commonwealth be protected against the financially irresponsible. In accomplishing this aim the legislature has provided for the suspension or revocation of operator's privileges and motor vehicle registration for those unable to establish financial responsibility after having been involved in an accident or having been proved to be incompetent or careless in their use of the highways.

It has further determined that no motor vehicle shall be, or continue to be, registered in the name of any person required to file proof of financial responsibility unless such motor vehicle is so designated in a certificate to be filed with the Department of Public Safety by an insurance carrier duly authorized to do business in this Commonwealth certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. KRS 187.470. The insurance companies are permitted to issue two types of policies, an operator's policy for those not owning a motor vehicle and an owner's policy for those having legal title to one.

All persons required to furnish proof of ability to respond in damages under the law are included in the statutory classification of "operator" or "owner." To allow any ambiguity to exist in the meaning of these words under the Kentucky Financial Responsibility Law would defeat its purpose.

The ultimate beneficiary of a policy issued under the Financial Responsibility Law is the general public, not the insured. To achieve the protection of the public intended by the legislature and to efficiently administer the law it is necessary that legal responsibility be fixed with reasonable certainty. This principle has been controlling with the courts of those jurisdictions having statutes similar to those of Kentucky. Cf. Indiana Lumbermen's Mutual Insurance Company v. Parton, 147 F.Supp. 887 (N.Carolina, 1957); Van Erem v. Dairyland Mutual Insurance Company, 5 N.W.2d 450, 93 N.W.2d 511 (Wisconsin, 1958); Annotation, 88 A.L.R.2d 995; Annotation, 83 A.L.R.2d 1104.

Record title or legal title is an indicia sufficient to raise a presumption of true ownership. It was a reasonable basis for the legislature to use in fixing legal responsibility under the law.

Before an automobile can be registered in this Commonwealth a bill of sale, or certificate of title, showing "ownership" or "legal title" in the person in whose name

the vehicle is to be registered, must be presented to the County Clerk.

■ The objective of the Financial Responsibility Law to protect the public against irresponsible persons would be defeated by permitting an insurer under the law to deny coverage on the basis of interests of ownership not of public record. There would be no certainty in fixing legal responsibility and the law would be incapable of administration were an insurer allowed to set up equitable, or other, interests of third parties in a motor vehicle registered in the name of its insured, or to set up any equitable interest of its insured in a vehicle registered in the name of another, in order to defeat the claim of the innocent statutory beneficiary of its policy.

Goad's operator's license was revoked. Before a new license could be issued to him it was necessary that proof be furnished of the existence of an "owner's" policy covering all motor vehicles, if any, registered in his name, or, proof of the existence of an "operator's" policy issued to him, if there were no motor vehicles registered in his name.

The appellee issued Form SR—22 to the Department of Public Safety, certifying to the existence of the "operator's" policy issued by it to Goad. The appellee's certificate certified that under the law the policy covered any situation in which Goad's negligent operation of any motor vehicle not registered in his name caused injury to another.

The legislature has determined that as between the insurer and an innocent injured member of the general public the risk is upon the insurer. This is made evident by the fact that KRS 187.490(8) provides, "(8) Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of KRS 187.290 to 187.620."

■ For the purposes of the Kentucky Financial Responsibility Law the owner of a motor vehicle, having legal title to it, is the person in whose name the vehicle is registered. Therefore KRS 187.490(3) means that an operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not registered in his name.

■ The automobile driven by Goad at the time of the collision in which appellants were injured was not an automobile owned by him under the provisions of the Kentucky Financial Responsibility Law so as to be excluded from insurance coverage under the endorsement to the policy issued to him by the appellee.

The cause is reversed with directions to enter judgment for the plaintiffs.