476 P.2d 530

**DAIRYLAND INSURANCE COMPANY,**
Appellant,

v.

**Charles RICHARDS and Lois Richards,**
husband and wife, Appellees.

**No. 2 CA–CIV 836.**

Court of Appeals of Arizona,
Division 2.

Nov. 10, 1970.

As Modified on Denial of Rehearing
Dec. 9, 1970.

Review Granted Jan. 26, 1971.

Murphy, Vinson & Hazlett, by Carl E. Hazlett, Tucson, for appellant.

Lesher & Scruggs, P. C., by D. Thompson Slutes, Tucson, for appellees.

HOWARD, Chief Judge.

This is an appeal from a $10,000.00 judgment entered against the appellant-insurer in garnishment proceedings.

Lois Richards was injured in an automobile accident on August 31, 1968 and on October 22, 1968, she and her husband filed suit to recover for her injuries, naming as defendants Raymond and Eula Sherfield and Pete O'Field. The complaint alleged that Lois Richards was injured "due to the negligence of the defendant, Pete O'Field, who at all material times was acting as agent of, or by the consent of Raymond Sherfield and Eula Sherfield, the owners of the automobile driven by O'Field." The prayer for relief requested damages "in a sum which is reasonable and just."

On November 19, 1968, defendant O'Field's default was entered and two days thereafter the default of defendants Sherfield was entered. On April 10, 1969, a hearing was held on the Richards' application for default judgment. Testimonial and documentary evidence were received and judgment was entered in the sum of $22,-500.00 against all defendants.

At the time of the accident in question, O'Field was insured under an operator's policy of motor vehicle liability insurance issued by the appellant-insurer. This insurance policy provided liability coverage for the named insured, O'Field, when operating a motor vehicle "not owned in full or in part by or registered in the name of the insured." The insurer had been given notice of the Richards' lawsuit but had declined to defend. At the time of the accident, Raymond and Eula Sherfield were the registered owners of the vehicle operated by O'Field although O'Field had fully paid them for it.

The instant garnishment proceedings followed. The insurer denied any indebtedness to O'Field. The Richards filed a pleading tendering an issue, alleging that the garnishee's answer was incorrect and that it was required to pay the judgment against O'Field under the terms of an insurance policy in full force and effect at the time of the accident.

In response to interrogatories submitted by the judgment creditors, the insurer admitted that on August 31, 1968, a "named operator's policy" was in effect affording coverage to O'Field. It also responded that coverage was restricted "to a private passenger automobile not owned in full or in part by or registered in the name of the insured" and since the insured owned the vehicle he was driving on August 31, 1968, there was no insurance coverage.

The trial court conducted a hearing and after submission of memoranda, ordered judgment in favor of the Richards in the amount of $10,000.00, the policy limit. The court made findings of fact and conclusions of law. It expressly found that at the time

of the accident, there was in effect an automobile liability policy; the defendant O'Field was the insured and the garnishee was the insurer; at the time of the accident the defendant O'Field was neither the registered owner of the 1956 Dodge truck which he acquired from the defendants Sherfield nor did he have the right to purchase the same under a conditional sales contract. The court concluded that O'Field was not in fact the "owner" of the 1956 Dodge truck, and that the issue of ownership had become res judicata by virtue of the entry of the judgment in the case.

Since we agree with the trial court's conclusion that O'Field was not the "owner", we do not consider the applicability of the res judicata doctrine.

A.R.S. § 28–130 defines the term "owner":

> " 'Owner' means a person who holds the legal title of a vehicle or, if a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, the conditional vendee or lessee, or, if a mortgagor of a vehicle is entitled to possession, the mortgagor."

There is no dispute that O'Field was not the registered owner of the vehicle involved in the accident in question. Also, he was neither a conditional vendee or lessee, nor a chattel mortgagor entitled to possession. The insurer argues however, that since O'Field had paid for the vehicle at the time of the accident, he was the equitable owner and was therefore excluded from coverage under his operator's policy. In support of this position, it cites the case of Tolano v. National Union Insurance Companies, 419 F.2d 377 (9th Cir. 1969). We, however, do not consider *Tolano* applicable since the question to be resolved was whether a car dealer's garage policy covering automobiles in which the dealer had an interest, covered a particular automobile which had been sold on credit. .

We find the cases of Van Erem v. Dairyland Mutual Insurance Company, 5 Wis. 2d 450, 93 N.W.2d 511 (1958) and Tharp v. Security Insurance Company of New Haven, Connecticut, 405 S.W.2d 760 (Ky. 1966) in point. Both Kentucky and Wisconsin have financial responsibility laws which contain statutory definitions of the term "owner" exactly like our A.R.S. § 28–130. In both cases, just as in the case at bench, record title of the vehicle in question was in one other than the insured although the insured had paid the purchase price. In *Van Erem, supra,* the court stated:

"The only equitable ownership exception the statute recognizes is that of a conditional vendee or lessee, or chattel mortgagor, who is entitled to possession. Sec. 85.09(1) (h), Stats., 1953. Gunderson's [the insured] equitable ownership did not fall within such statutory exception.

* * * * * *

"It was the obvious intent of the legislature that there should be no gap in the insurance protection afforded, where the proof of financial responsibility takes the form of filing a certificate of insurance. Before a driver's license will be issued to one in the position of Gunderson, who has had his license revoked, there must be proof of the existence of an owner's policy covering all motor vehicles registered in his name. If there are no motor vehicles registered in his name, there must be proof filed of the existence of an operator's policy issued to him. There would be a gap in such insurance protection if the insurance company, which has issued the certificate as to existence of an operator's policy, were permitted to rely on an exclusion clause that would not cover the insured operator when he was operating any vehicle not registered in his name." 93 N.W.2d at 514.

In *Tharp, supra,* it was stated:

"The objective of the Financial Responsibility Law to protect the public against irresponsible persons would be defeated by permitting an insurer under the law to deny coverage on the basis of interest of ownership not of public record. There would be no certainty in fixing legal responsibility and the law would be incapable of administration were an insurer allowed to set up equitable, or other, interests of third parties in a motor vehicle registered in the name of its insured, or to set up any equitable interest of its insured in a vehicle registered in the name of another, in order to defeat the claim of the innocent statutory beneficiary of its policy.

* * * * * *

"For the purposes of the Kentucky Financial Responsibility Law the owner of a motor vehicle, having legal title to it, is the person in whose name the vehicle is registered. Therefore K.R.S. 187.490 (3) [statutory replica of our A.R.S. § 28–1170, subsec. C.] means that an operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not registered in his name." 405 S.W.2d at 766.

In this state, our legislature also intended protection of the general public against the individual, financially irresponsible motorist. Transportation Insurance Company v. Wade, 106 Ariz. 269, 475 P.2d 253 (filed October 8, 1970). We hold, therefore, that the trial court was correct in not allowing the insurer to deny coverage on the basis of O'Field's equitable interest.

Appellant-insurer postulates the argument that the original judgment does not warrant the granting of judgment in the garnishment proceeding for the reason that the original judgment is "void." Rule 54(d), A.R.C.P., 16 A.R.S., provides in part:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. * * *"

Without passing upon the question of whether appellant-insurer may raise this question by way of collateral attack, suffice it to say that the default judgment did not violate the mandate of Rule 54(d).

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.