## McDaniel, et al. v. McDaniel, et al.

(Decided February 9, 1926.)

### Appeal from Breathitt Circuit Court.

1. Marriage—A Valid Marriage May be Proved Not Only by the Record, but by Witnesses to Ceremony.—Though under laws of the state there must be a marriage in fact, common-law marriage not being recognized as valid, record evidence is not essential to a valid marriage; it being provable not only by the record, but by persons who witnessed the ceremony.

2. Marriage—Parties Living Together as Man and Wife and Recognized as Such in Society are Presumed to Have Been Legally Married.—Where parties have lived together ostensibly as man and wife for a long period, have recognized and treated each other and have been received into society as such, it is presumed that they have been legally married.

3. Marriage—Usual Way of Proving Marriage is by General Reputation, Cohabitation, and Acknowledgment.—The usual way of proving marriage, except in actions for criminal conversations and in prosecutions for bigamy, is by general reputation, cohabitation, and acknowledgment.

4. Marriage—Failure of Minister to Recollect Performance of Marriage Ceremony 23 Years Ago Held Not to Overcome Testimony as to Her Marriage by Woman and Another.—Failure of minister to recollect marriage performed by him 23 years ago held not to overcome testimony of woman that she was married, especially when supported by testimony of another witness.

O. H. POLLARD and ERVINE TURNER for appellants.

A. M. RUSSELL and A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Harrison McDaniel, who owned a farm in Breathitt county, died intestate on February 19, 1921. Claiming the land as the only heir of his son, Arthur McDaniel, the father of Harrison McDaniel, conveyed the land to his son-in-law, George W. Turner, who knew the condition of the title. Thereafter, Evelyn McDaniel, claiming to be the widow, and Elbert McDaniel, Beech McDaniel, Odda McDaniel and Sarah McDaniel, claiming to be the children of Harrison McDaniel, brought this suit against Arthur McDaniel to recover the land. Turner also became a party, and alleged that he had purchased the land and was the owner thereof subject to a life estate in Arthur McDaniel. The defense was that Evelyn

McDaniel and Harrison were never married. On final hearing the chancellor adjudged that they had been married, and awarded the land to plaintiffs. Arthur McDaniel and Turner appeal.

It is admitted that a marriage license was issued to Harrison McDaniel and Evelyn McIntosh on March 13, 1901, but, according to the clerk's records, the license was not returned or recorded. It appears, however, that many other marriage certificates in cases where the marriages were actually solemnized were not recorded. It further appears that Harrison and Evelyn left home saying that they were going to marry. Upon their return they stated that they had been married. After that they lived together for many years as husband and wife. During that time she joined in a mortgage and executed two leases as the wife of Harrison McDaniel. She bore his name, her children called him "papa" and also called Arthur McDaniel "grandpa." Harrison and Evelyn were members of the Presbyterian church, and bore a good reputation in the community. Aside from this Evelyn McDaniel deposed that she and Harrison were married in a country store owned by John E. Holcomb in Jackson county by a minister named Billy Robins. Debbie Couch says she was present and saw the marriage performed. On the other hand, a preacher by the name of W. A. Robbins stated that he had no recollection of having performed the ceremony, and would have remembered it if he had performed it. A few witnesses stated that Evelyn's reputation was bad, and Debbie Couch was also impeached. Arthur McDaniel testified that his son only recognized Evelyn's oldest child as his own. There was further evidence that Evelyn admitted to one or two persons that she was not married, and that the marriage was doubted by some of the people in the community.

It is true that under the law of this state there must be a marriage in fact, and that common law marriages are not recognized as valid. However, record evidence is not essential to a valid marriage. It may be proved not only by the record, but by persons who witnessed the ceremony. Also a presumption of marriage may arise from reputation. Thus where the parties have lived together ostensibly as man and wife for a long period of time, and have recognized and treated each other as such, and have been received into society and treated by their friends and relations as having and

being entitled to that status, the law, in the interest of morality and decency, will presume that they have been legally married. Indeed, the most usual way of proving marriage except in actions for criminal conversation, and in prosecutions for bigamy, is by general reputation, cohabitation and acknowledgment.    Travers v. Reinhardt, 205 U. S. 423, 27 S. Ct. 563, 51 L. ed. 865; Bartee v. Edmunds, 29 Ky. Law Rep. 872, 96 S. W. 535; Caldwell v. Williams, 118 S. W. 932. It is true that the existence of the marriage relation between Harrison and Evelyn was doubted by some of the neighbors; that there was some evidence that Evelyn's reputation was bad; and that Harrison's father deposed that Harrison recognized only the oldest child as his own. It must not be overlooked, however, that Harrison was shown to be a good man and a faithful member of the Presbyterian church; that he and Evelyn attended church together, associated with its members and even with those who deposed against them; that they lived together in the same household with all the children, and that during a large portion of the time appellant made his home with them. It is hardly probable that this condition of affairs would have existed if Harrison and Evelyn had been living in concubinage, or her relations with other men had been such as to raise a doubt as to the paternity of her children. Not only so, but we do not have to rely solely on the presumption arising from the fact that the parties for many years lived together, recognized and treated each other as husband and wife, and were generally regarded as husband and wife in the community. In addition, we have the fact that they procured a license, announced their purpose to get married, left home with that intention, and stated on their return that they had been married, coupled not only with the evidence of Evelyn, but that of another witness, who claims to have been present, that the marriage ceremony was actually performed. Opposed to this is the testimony of the minister that he had no recollection of performing the ceremony, but, as the event took place twenty-three years before he testified, and in the meantime he had spent several years in the state of Oklahoma, it may be that his memory is at fault, and as her wedding is the supreme event in the life of a woman, we are not disposed to hold that his evidence is sufficient to overcome that of Mrs. McDaniel, especially when supported by the testimony of another witness.

For the reasons given we see no reason to disturb the finding of the chancellor.

Judgment affirmed.