## Griffith et al. v. Lunney.

April 24, 1945.

Thomas Burchett and Davis M. Howerton for appellant.

Dinkle & Fannin and John W. McKenzie for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD—
Affirming.

Samuel Hugh Lunney, a barber of the city of Ashland, died on May 28, 1942, leaving a small estate and a holographic will bearing the date of March 26, 1936, reading as follows:

"This being my last WILL and testament and Being of sound mind and Body will or bequeath all of my property Both rel and personal to my Devoted wife Carrie Lunney and her to BE made Exaocutor of SaID Property includinc insuranc

"Samuel Hugh Lunney"

Lunney's mother, acting through her committee, appealed from the order of the County Court admitting the will to probate, a jury in the Circuit Court upheld the will, and this appeal by the mother's administratrix, she having died and the action having been revived, is from the judgment of the Circuit Court entered upon

that verdict. The court gave the jury but one instruction, as follows:

"The court instructs the jury that if they believe from the evidence that Sam Lunney, the testator, and Carrie Lunney were lawfully married to each other prior to the 26th day of March, 1936, the date of the execution of the writing purporting to be the last will and testament of the said Sam Lunney, they shall find the said writing to be the last will and testament of the said Sam Lunney, deceased, unless you so believe from the evidence, you will find the writing not to be the will of the said Sam Lunney."

As will be observed, the only issue submitted was whether the testator and his wife were lawfully married prior to the date on which the will was executed, the contestant having predicated her whole case upon the contention that Lunney and the appellee were not husband and wife when the will was executed, and that the subsequent admittedly valid marriage revoked the will by reason of KRS 394.090 which is as follows: "Every will shall be revoked by the marriage of the person who made the will, except a will made in exercise of a power of appointment when the estate thereby appointed would not, in default of such appointment, pass to the heir, personal representative, or next of kin of the person who made the will."

It is very doubtful whether the statute was intended to apply to a will wholly in favor of a woman who subsequently became the wife of a testator, since it was obviously enacted for the wife's protection; but it is not necessary to decide that question since the evidence was sufficient to support the jury's finding that the appellee had acquired that status prior to March 26, 1936. She testified without objection that she and Lunney were married in Scioto County, Ohio, on the night of December 10, 1930, by a justice of the peace to whose home she and Lunney, accompanied by one of their friends, drove in an automobile. Thereafter, Lunney and his friend left her at a nearby roadhouse known as "Aunt Sudie's Place" while they attended a chicken fight, after which, in company with another friend of Lunney's whom they met at the fight, the party returned to Ashland where she and Lunney took up their abode. In 1924, in Pike County, Kentucky, appellee had been di-

vorced from her first husband who had since died; and in 1939, having been informed by her brother that the costs in her divorce case had never been paid and that there might be some question as to whether or not the decree had actually been entered, she and Lunney decided that they would be re-married. Whereupon, on February 10, 1940, the ceremony was performed by a Baptist minister in Greenup, Kentucky. Mrs. Carlisle in whose home in Ashland Lunney and appellee took up their abode in the early morning hours of December 11, 1930, testified that they had informed her of their intention to get married, and that on their return from Ohio on that date they showed her a marriage certificate and told her that they had been married; and numerous friends and acquaintances, including Lunney's sister who instituted the suit as her mother's committee testified that from that time on Lunney and appellee lived together as husband and wife and were regarded as such by everyone. That he was devoted to her and boasted of her qualifications as a wife, there can be no question and Mrs. Carlisle further testified that when Lunney and appellee returned from Greenup following their second marriage in 1940, Lunney said to her: "Carrie ought to be mine now as I have married her twice."

Appellant argues that appellee's inability to produce any record of the first marriage or to locate the magistrate who performed the ceremony, the fact that she could easily have ascertained that her divorce from her first husband was valid, the fact that the witness who it is claimed was present when the ceremony was performed and the friend who drove back to Ashland with them on the night of December 10, 1930, were dead at the time of the present litigation, together with other circumstances, stamp her testimony as a fabrication. The issue in view of these factors was one for the jury, and it is entirely clear that appellants were not, as contended by them, entitled to a peremptory instruction. Marriage is favored by the law; and we have written that a marriage may be proven by parole, that a presumption of marriage may arise from reputation, that when a marriage ceremony is shown to have been performed the validity of the marriage, in the absence of proof to the contrary, will be presumed, and that the presumption of legality is one of the strongest known to the law. Scott v. Scott, 200 Ky. 153, 252 S. W. 1019;

McDaniel v. McDaniel, 212 Ky. 833, 280 S. W. 145; Vest's Admr. et al. v. Vest et al., 234 Ky. 587, 28 S. W. 2d 782. Here, we not only have appellee's testimony that a ceremony was performed, but uncontradicted proof that she and Lunney, after December 10, 1930, openly lived together as man and wife and were recognized as such by all their friends and acquaintances. Moreover, it is significant that Lunney in his will speaks of appellee as "my devoted wife."

Appellants also complain of the alleged error of the court in refusing to give a tendered instruction defining "Lawful Marriage" and setting forth the requirements of the Ohio Statutes relative to the information which must be given in order to obtain a marriage license in that State. But the jury unquestionably knew that a ceremony of some kind was necessary to effect a lawful marriage, and it was not claimed by appellee that a common-law marriage had been entered into, her own testimony showing that she and Lunney had not cohabited in Ohio. Under the authorities cited above as to the presumptions which the law indulges where a ceremony is proven, it was sufficient that the jury believe, as they obviously did, appellee's uncontradicted testimony on that subject; and the other uncontradicted testimony introduced by appellee was amply sufficient to justify that belief.

Judgment affirmed.

Whole Court sitting.