**GRIFFIN v. BEDDOW et al.**

Court of Appeals of Kentucky.

May 7, 1954.

Rehearing Denied June 18, 1954.

James F. Clay, Danville, for appellant.

Jay. W. Harlan, Danville, Joseph J. Leary, Frankfort, Joe Davis, Danville, for appellee.

MOREMEN, Justice.

The opinion upon the first appeal of this case appears in 257 S.W.2d 45. There it was held, under an allegation of facts accepted as being true upon demurrer, that the marriage of an idiot or a lunatic was so repugnant to the fundamental public policy of this state that the general rule—the validity of a marriage contract is governed by the lex loci contractus and celebrationis—was not applicable. Upon return to the circuit court the case was tried on the sole issue of whether Robert L. Beddow was a lunatic on January 30, 1950, when a marriage ceremony was performed between him and Josephine Epperson at Columbus, Mississippi, while both were residents of Kentucky.

The chancellor presided over the trial at which many witnesses were heard, and concluded that Robert L. Beddow, on the nuptial day, was capable of understanding the nature of a marriage contract with its resultant duties and responsibilities. He reached this conclusion after evaluating the evidence under these rules: 1. The law presumes that a person who has entered into a marriage contract was mentally capable of entering into such a contract. 2. The burden of showing that a party to such a contract lacks such capacity devolves

upon the person attacking the validity of the marriage. We believe the attitude assumed by the chancellor was correct.

In Vest's Adm'r v. Vest, 234 Ky. 587, 28 S.W.2d 782, 783, this rule was approved:

" 'The law and public policy favor matrimony, and when the celebration of a marriage is once shown, the contract of marriage, the capacity of the parties, and, in fact, everything necessary to the validity of the marriage, in absence of proof to the contrary, will be presumed. * * * This presumption of legality is said to be one of the strongest known to law' ".

Additional supporting authority may be found in 35 Am.Jur., Marriage, § 113; Griffith v. Lunney, 300 Ky. 66, 187 S.W.2d 431, and Littreal v. Littreal, Ky., 253 S.W. 2d 247.

With these principles in mind the chancellor analyzed the evidence adduced and, since we believe his findings to be correct, we adopt the following portion of his opinion:

"Various doctors testified as to Beddow's mental capacity. One of these doctors, testifying for the plaintiff, Dr. Jackson, gave impressive testimony with his history of the case and with his conclusion that Beddow was not capable of entering into the marriage relation.

"On the other hand, there is the testimony of Dr. Jester, who appears to have been his attending physician from the summer of 1949 until near the close of that year, having seen him 17 times in professional visits from July 20 to December 24. Further, there is the testimony of Dr. Ahrens, Superintendent of the State Hospital at Danville, to the effect that Beddow was mentally capable of entering into the marriage relationship.

"So far as the court recalls, there is no testimony of substance tending to show that there was any change in his mental condition from the latter part of December, the date of the last visit of Dr. Jester, until the date of his marriage.

"The circumstances under which the marriage took place, the manner in which the trip was made to Mississippi from Kentucky and the marriage ceremony performed in Mississippi does seem most unusual to the court and compels the court to look with a good deal of suspicion upon it; but suspicion cannot take the place of evidence and, the mere fact that the parties went to Mississippi under the circumstances disclosed in this evidence and had the marriage performed there does not justify this court in treating these circumstances of sufficient evidential value to overcome the presumption of legality of the marriage.

"There is absolutely no testimony from anybody that at the date of the marriage Beddow was of unsound mind or incapable of entering into the marriage relation. The testimony as to what his condition was before or after the time of his marriage is of value only as it is evidential of what his mental condition was at precisely the date of the marriage.

"We have two witnesses who testify as to the mental capacity of Beddow at the time he was under their observation, October, 1949, leading up to the execution of the will introduced in evidence, these witnesses being Mr. Davis and Mr. Huguely, attorneys of this bar. They talked to Beddow about his business, consulted him and prepared the will as he directed. The court feels it is not out of place in connection with their testimony, to make the observation that he knows these two gentlemen well; that he feels thoroughly justified, from his knowledge of them, in accepting their testimony as to the condition of the mind of Beddow at the time in question.

"Plaintiff has taken the testimony of Dr. Leet. The court has read carefully that deposition. It is very impres-

sive in its clearness and cogency of statement; but, as evidence it must be read and taken in the light of circumstances under which the examination of Beddow was made. Beddow, just a few days before that examination, had suffered another paralytic stroke. In the light of Dr. Lyons' testimony for the defense, the court cannot escape the conclusion that the patient at that time had not recovered from the shock of that stroke and that it is not reasonable to infer that his condition at the time Dr. Leet examined him was his condition at the time the marriage was celebrated some two months prior thereto.

■ "The court believes that the most that can be said for the case as made out for the plaintiff is that his evidence when measured against the contrary evidence of the defendants raises but an equilibrium of proof and falls short of overcoming the presumption of the legality of the marriage.

■ "As to the quality of mind or reason one should have in order to be able to contract marriage one of the best statements of the principle is found in 28 A.L.R. at page 639 where it is said that the rule frequently has been laid down broadly that mental incapacity to enter into a marriage exists wherever there is such mental incapacity as to disable one from understanding the contract, its nature and probable consequences. But it has also been observed that marriage depends to a great extent on sentiment, attachment and affection which persons with equal, as well as those with stronger intellects feel and that it does not depend, to the extent that ordinary contracts do, on the exercise of clear reason, discernment and sound judgment. Ordinarily, the mental capacity must relate specifically to the contract of marriage in order to effect it and if a person entering the marriage relation has sufficient capacity to understand the nature of the contract and the duties and responsibilities it creates, the marriage will be valid. To render a person mentally incompetent to contract a marriage, it is not necessary that the mental defect be such as entirely to dethrone his reason or amount to an entire want of reason.

"It is the conclusion of the court, accordingly, that the plaintiff has failed to discharge the burden that rested upon him to show that at the time of this marriage Robert L. Beddow was mentally incapable to enter into it, and the rights of the parties are so declared."

CR 52.01 reads in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

When the force of this section of the Civil Rules is applied to the facts of this record, the judgment must be affirmed.

Judgment affirmed.