# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 22, 2015 Session

## MARVIN DEWAYNE ECHOLS v. ELKE MONIKA ECHOLS

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVN130217     Ross H. Hicks, Judge**

_____

**No. M2014-01856-COA-R3-CV – Filed September 29, 2015**

_____

This appeal arises from a divorce involving a challenge to the validity of the marriage. Marvin Dewayne Echols ("Husband") filed suit for divorce against his wife Elke Monika Echols ("Wife") in the Circuit Court for Montgomery County ("the Trial Court").[1] Husband later alleged that his marriage to Wife was void. Husband and Wife had married shortly after a German court had pronounced Wife divorced, and Husband's position is that Wife's divorce was not yet legally binding under German law when they married in Kentucky. The Trial Court, among other things, found the marriage valid and granted the parties a divorce. Husband raises several issues on appeal, chief among them the issue of the validity of the marriage in the first place. We hold that Husband failed to prove that his marriage to Wife was invalid. We affirm the judgment of the Trial Court in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Karla C. Miller, Nashville, Tennessee, for the appellant, Marvin Dewayne Echols.

Michael K. Williamson, Clarksville, Tennessee, for the appellee, Elke Monika Echols.

_____

[1] Although this appeal involves a challenge to the very validity of the marriage and we do not wish to beg the question by referring to the parties as husband and wife from the beginning, we believe it would be too cumbersome to refer to the parties as "putative husband" and "putative wife" throughout the opinion. This is especially so in light of our holding.

# OPINION

## Background

The pertinent background facts of this appeal are simple. Husband and Wife were married in Elizabethtown, Kentucky, on December 29, 1986. The parties had met on December 31, 1985 in Germany. Husband was stationed in Germany on military assignment. Wife, a German citizen, was married at the time they met. A German court pronounced Wife divorced from her husband on November 21, 1986. The divorce decree was to become "legally binding" on January 10, 1987. Husband and Wife's marriage thus fell between the date of the "pronouncement" of the divorce and the date the divorce became legally binding.

Husband, now living in Tennessee, filed for divorce from Wife in January 2013. In July 2014, Husband moved to amend his pleadings to request an annulment based on the alleged invalidity of the marriage. This case was tried in August 2014. The Trial Court found the parties' marriage valid, stating in its August 2014 order:

> The Court specifically finds that this marriage between Mr. and Mrs. Echols is valid. It should not be annulled, based on the reasons stated in the Trial Brief addressing the validity of the marriage. In addition to those reasons, which basically set forth the translation of the German statutes and state why, under German law, this marriage is valid at this point, the Court finds that Mr. Echols has been guilty of latches in raising that issue. That he has essentially waived it by waiting so long in this process and he is, furthermore, estopped from raising it at this point by virtue of the fact that he has derived the benefits for all of these years of having been married and treating the marriage as having been valid. Further, the Court specifically finds if there was any sort of misunderstanding on the part of Mrs. Echols back at the time the parties were married with regard to when she had been divorced, the Court finds it was simply that, a misunderstanding, and there was no effort made on her part to deceive Mr. Echols, in any way, with regard to the status of her divorce proceedings. For those reasons, the Court finds the marriage is valid and shall be treated as a valid marriage.

The Trial Court also divided the marital estate. In a subsequent order, the Trial Court granted Wife her attorney's fees in the amount of $5,500. Husband's motion to alter or amend was denied. Husband appealed.

**Discussion**

Although not stated exactly as such, Husband raises the following issues on appeal: 1) whether the Trial Court erred in finding the parties' marriage valid; 2) whether the Trial Court erred in dividing Husband's retirement accounts as marital property and awarding Wife alimony when the marriage allegedly was void; 3) whether the Trial Court erred in awarding Wife her attorney's fees in defending the claim of an invalid marriage; and, 4) whether Husband should be awarded his attorney's fees on appeal. Wife raises her own issue of whether she should be awarded her attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in finding the parties' marriage valid. Three dates are critical to this issue. A German court "pronounced" Wife divorced on November 21, 1986. Husband and Wife married in Kentucky on December 29, 1986. Via the German divorce documents, Wife's divorce from her previous husband was to become "legally binding" on January 10, 1987. In the interim period between November 21, 1986 and January 10, 1987, apparently an appeal theoretically could have been filed in German court to challenge the divorce. In reality, no appeal was taken. The question then is whether the fact that Wife married Husband during this interim period renders their marriage bigamous and therefore invalid.

The record contains certain relevant passages of German law on the subject, as follows:

**Section 517**
**Time limit for filing an appeal**
The time limit for filing an appeal shall amount to one (1) month; this is a statutory period and shall begin upon the fully worded ruling having been served, at the latest, however, upon the expiry of five (5) months following pronouncement of the judgment.

**Section 1306**
**Existing marriage or civil partnership**
A marriage may not be entered into if a marriage or a civil partnership exists between one of the persons who intend to be married to each other and a third party.

**Section 1315 Exclusion of annulment**

\*\*\*

(2) An annulment of the marriage is further excluded
1. In the case of a breach of section 1306, if, before the new marriage is entered into, the dissolution by divorce or the annulment of the former marriage or the annulment of the civil partnership is pronounced and this pronouncement becomes final and absolute after the new marriage is entered into;

Wife argues that Section 1315(2)1 of the German code fits this case exactly. That is, Wife's divorce from her previous husband was pronounced, she married Husband in the interim period, her divorce from her previous husband became "final and absolute after . . ." Husband and Wife's marriage was entered into, and, therefore, the possibility of an annulment was foreclosed. Wife argues, therefore, that the German divorce was final and the subsequent marriage ratified despite the interim period for challenge to the divorce. Husband disagrees with this interpretation. Moreover, Husband argues that the threshold question should be whether the marriage is valid under Kentucky law as Kentucky, is, after all, where the parties were married.

We now review Kentucky law on marriage. The Court of Appeals of Kentucky has discussed Kentucky's presumption of validity of marriages as follows:

> Kentucky law favors marriage, *Griffith v. Lunney*, 300 Ky. 66, 68, 187 S.W.2d 431, 433 (1945), and "[w]here a marriage ceremony is shown, every presumption will be indulged that it was legally performed." *Vest's Adm'r v. Vest*, 234 Ky. 587, 28 S.W.2d 782, 783 (1930). In *Vest*, which held parol evidence was sufficient to prove a legally valid civil marriage between a deceased and one claiming as his widow, notwithstanding the absence of record evidence, our former Court of Appeals quoted 18 R.C.L. 416 § 39, stating:
>
> > [t]he law and public policy favor matrimony, and when the celebration of a marriage is once shown, the contract of marriage, the capacity of the parties, and, in fact, everything

-4-

necessary to the validity of the marriage, *in the absence of proof to the contrary*, will be presumed. It will be presumed that the person assuming to officiate at the ceremony was authorized to perform it, *and that a license was properly issued*. This presumption of legality is said to be one of the strongest known to the law, especially where the legitimacy of children is involved, for the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy.

*Id*. (Emphasis added). Likewise, in *Potter v. Stanley*, 187 Ky. 292, 219 S.W. 167, 170 (1920), the court upheld a marriage where it was undisputed that a marriage ceremony had been properly solemnized, although the marriage license and the certification of the officiant who had solemnized the marriage ceremony had been mislaid or destroyed, and no one could testify as to the exact date of the marriage ceremony.

While such a presumption of a legally valid civil marriage is one of the strongest presumptions known in the law, it may be indulged only so long as there is no substantial evidence to the contrary; but when that is offered, the presumption disappears and the issues must be decided on the evidence. *Carroll*, 251 S.W.2d at 991. In *Carroll*, our former Court of Appeals affirmed the trial court's finding that the surviving woman had failed to prove her allegation of a "ceremonial marriage" in Ohio but reversed the trial court's finding that a common-law marriage had been consummated in Florida. In holding "where the relationship is meretricious in its inception, it will be presumed to continue so in the absence of evidence to the contrary," the Court stated:

[w]e are reluctant to hold that these people were not married, but the same reasons which impel the Courts to protect the marriage institution preclude us from making any exception in favor of those who disregard the solemnities which experience has proved are necessary to protect the sanctity of that institution.

*Id*. (Citations omitted). Though recognizing the surviving woman may have believed in good faith she was married, the Court determined the evidence would not sustain such a finding.

Thus, while every presumption will be indulged to support finding a legally valid civil marriage, parties may not disregard statutorily mandated solemnities, and the strongest presumption must yield to uncontroverted evidence.

*Pinkhasov v. Petocz*, 331 S.W.3d 285, 293-94 (Ky. App. 2011) (footnote omitted).

KRS § 402.020 states that a marriage is void where "there is a husband or wife living, from whom the person marrying has not been divorced…." However, a Comptroller General decision analyzing the Kentucky case *Ferguson v. Ferguson* appears to support the proposition that even a bigamous marriage in Kentucky will be recognized if it has not been appropriately challenged. The *Matter of: Myrtle O. Morris*, 1993 WL 284903 (Comp. Gen. July 22, 1993) discusses the voidability of bigamous marriage in Kentucky as follows:

The attorney cites *Ferguson v. Ferguson*, 610 S.W.2d 925 (Ky. Ct. App.) (1981) as standing for the proposition that even a bigamous marriage will be honored in Kentucky unless appropriately challenged. In *Ferguson*, William Ferguson married Eva Ferguson in 1969, 6 days prior to his divorce from his first wife. The son from the first marriage petitioned the court to be appointed the administrator of William's estate after William's death in 1979. The Court of Appeals found that since the marriage had not been challenged in accordance with section 403.210(2)(b), it was valid and the appointment of Eva as administratrix was proper.

Under the holding in *Ferguson*, the 1987 marriage between Sergeant Morris and Myrtle Morris is not void *ab initio*, meaning it never had any existence, but merely voidable, meaning that it is subject to challenge under certain circumstances. Since no action was taken to void the marriage, it stands as valid, even though "prohibited and void."

Under these circumstances, we believe Myrtle and Sergeant Morris should be considered as having been married for over 3 years for the purpose of qualifying her as an eligible widow entitled to the SBP annuity.

Finally, we turn to Tennessee law on marriage. Perhaps the seminal case in recent times on bigamy and the validity of marriages in Tennesse is *Guzman v. Alvares*. *Guzman* states about marriage generally:

Except as restricted by constitutional provisions, the inception, duration, status, conditions, and termination of a marriage in Tennessee are

-6-

subject to state legislative power and control. *Crawford v. Crawford*, 198 Tenn. 9, 277 S.W.2d 389, 391 (1955); *see Martin v. Coleman*, 19 S.W.3d 757, 760 (Tenn. 2000). Common-law marriages are not recognized in Tennessee. *Martin*, 19 S.W.3d at 760. Our state's legislature also prohibits bigamous marriages. *See* Tenn.Code Ann. § 36-3-102 (2005) ("A second marriage cannot be contracted before the dissolution of the first."). Tennessee Code Annotated section 36-3-306 (2005) further provides that "[n]o marriage shall be valid, whether consummated by ceremony or otherwise, if the marriage is prohibited in this state."

Mr. Alvares maintains the parties' marriage should be annulled because Ms. Guzman's divorce from Mr. Covarrubias had not been finalized when the parties were married and that, as a result, the parties entered into a bigamous marriage. *See* Tenn. Code Ann. § 36-4-119 (1996); *see also Emmit v. Emmit*, 174 S.W.3d 248, 252 (Tenn. Ct. App. 2005) (holding that a trial court may annul a bigamous marriage). To protect the institution of marriage in Tennessee, regularly solemnized marriages are presumed to be valid. *Aghili v. Saadatnejadi*, 958 S.W.2d 784, 789 (Tenn. Ct. App. 1997). Furthermore, in cases involving a subsequent marriage, courts presume that the previous marriage ended in divorce. *Emmit*, 174 S.W.3d at 252. These presumptions are not conclusive and may be rebutted. *See id.*; *Duggan v. Ogle*, 25 Tenn. App. 467, 159 S.W.2d 834, 838 (1941). As the party challenging the validity of the marriage, Mr. Alvares bears the burden of rebutting the presumptions by providing "cogent and convincing" evidence that the marriage between him and Ms. Guzman is invalid. *See Aghili*, 958 S.W.2d at 789.

*Guzman v. Alvares*, 205 S.W.3d 375, 379-80 (Tenn. 2006) (footnote omitted).

Now Chief Judge Susano, in *Farnham*, well summarized *Guzman*:

In *Guzman*, the parties were married in Mexico under the belief that Ms. Guzman's Mexican divorce from her first husband was final. Although her former husband had been granted a divorce at the trial court level in April 1986, the case went to the Supreme Court of Jalisco (Mexico) on automatic review. That court did not enter its judgment confirming the divorce until March 1987. Two expert witnesses testified that, under Mexican law, the divorce was not final under Mexican law until the Jalisco Supreme Court had entered its decree. In the interim, Ms. Guzman and Mr. Alvares were married in August 1986. The couple moved to Tennessee, had four children together, and lived as a married couple until Wife sought

-7-

a divorce in 2002 on grounds of adultery, inappropriate marital conduct, and irreconcilable differences. At the trial, the proof showed that Wife was never served with the final divorce decree from her first marriage and she testified she did not know of the circumstances surrounding her divorce until Mr. Alvares filed his answer and counterclaimed for annulment based on her subsisting first marriage. The trial court found a marriage by estoppel, granted Ms. Guzman a divorce, divided the marital estate, and ordered Mr. Alvares to pay child support.

On appeal, this court affirmed the judgment except with regard to the property division. On second-tier appellate review, the Supreme Court reversed our judgment. Noting that there was no evidence presented that the parties ever entered into a lawful marriage after Ms. Guzman's divorce became final, the Court concluded that Mr. Alvares had established that the parties' marriage was bigamous and void. In considering whether marriage by estoppel would apply, the court further observed: "When one of the parties to the purported marriage seeks to invoke the doctrine of marriage by estoppel in a case against the other party to the marriage, this Court has refused to apply the doctrine when the parties entered into a bigamous marriage, regardless of either party's knowledge of the impediment." *Id.* at 380-81 (citing *Pewitt v. Pewitt*, 192 Tenn. 227, 240 S.W.2d 521, 526-28 (Tenn. 1951)). In short, the *Guzman* Court held that "the applicable statutes, our prior case law, and the public policy of this state prohibit the application of the marriage by estoppel doctrine to void, bigamous marriages." *Id.* Husband insists that *Guzman's* holding applies to prevent the parties' Florida marriage by estoppel from being recognized in this state. We disagree. The overriding problem with the "marriage" at issue in Guzman was that there was no evidence that it was ever recognized as valid as a marriage by estoppel or under any other theory of Mexican law. Stated differently, the validity of the marriage in *Guzman* was entirely dependent on the application of Tennessee law and, as the Supreme Court observed, Tennessee does not permit a marriage by estoppel in the case of a void, bigamous marriage. For these reasons, the Tennessee Supreme Court refused to apply principles of estoppel to validate a marriage that was void under the laws of the jurisdiction where it was entered into. To the contrary, the present case involves a marriage that is recognized as valid under Florida law, where it was celebrated, as well as Massachusetts law, where the parties also lived together as husband and wife. In our view, the trial court properly gave full faith and credit to the laws of our sister states. In our view, there is no question that under the circumstances of this case,

the trial court properly found that the parties' 17-year union was a valid marriage recognizable as such in Tennessee.

*Farnham v. Farnham*, 323 S.W.3d 129, 139-40 (Tenn. Ct. App. 2009).

From our review of the law in the multiple relevant jurisdictions, we can discern certain useful principles to guide our analysis as to whether Husband's and Wife's marriage is valid. First, in both Tennessee and Kentucky, there is a strong but rebuttable presumption of the validity of marriages. In other words, Husband bears the burden of proving that his marriage to Wife was invalid. Second, from the *Guzman* opinion, we can employ the methodology used by our Supreme Court in determining whether the German divorce in the present case was final. The question then effectively becomes whether Husband has proven that his marriage to Wife was invalid as bigamous because the German divorce was not final when they married in Kentucky. We believe that Husband has not met his burden.

In the *Guzman* case, two expert witnesses testified at trial that the wife's divorce was not final under Mexican law. In the present case, no such proof even similar to the expert testimony presented in *Guzman* sufficient to undermine the validity of the parties' marriage was presented to the Trial Court. The parties dispute the proper interpretation of German law as presented to the Trial Court, as limited as it was, and as contained in the record. However, there is no definitive evidence in the record showing that Wife's marrying Husband in the interim period between her divorce pronouncement and its becoming final renders their marriage bigamous. Indeed, a plausible interpretation of the German law furnished to the Trial Court and to us suggests that Wife's marriage to Husband in that interim period foreclosed the possibility of annulment once the pronouncement became final and absolute as it did here. In short, under this plausible interpretation of German law to this specific fact pattern, which is the best the Trial Court and this Court can do as no expert witnesses were presented as they were in *Guzman*, the German divorce is treated under German law as being final as of the date of the divorce pronouncement. At most, it appears that Wife took a chance in marrying Husband during the interim period, but, as no challenge to her divorce in the previous matter ever was advanced, that risk and controversy are mooted. We hold that Husband has failed to overcome the presumption of validity of his marriage to Wife. We affirm the Trial Court on this issue.[2]

We next address whether the Trial Court erred in dividing Husband's retirement accounts as marital property and awarding Wife alimony when the marriage

---

[2] To the extent the Trial Court also relied on equitable doctrines to find the marriage valid, we decline to affirm on that basis. We do however agree with the Trial Court's result.

allegedly was void. Husband's argument on this issue, as he concedes in his brief, is inseparable from his argument that his marriage to Wife was void. Our having concluded already that the marriage was valid, Husband's argument on this issue fails. We affirm the Trial Court on this issue.

We next address whether the Trial Court erred in awarding Wife her attorney's fees in defending the claim of an invalid marriage. With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citations omitted).

The record reflects that Husband's monthly income is $5,519.16. Wife's monthly income is $1,917.09. Wife has a high school education and works at a child development center. Husband had served in the military for many years and worked at FedEx. There is a deep disparity in the earning power of the parties. Wife was made not only to contest the divorce but also to defend the validity of her marriage to Husband, a position on which she ultimately prevailed, incurring additional attorney's fees in the process. We find no abuse of discretion in the Trial Court's award to Wife of her attorney's fees of $5,500. We affirm the judgment of the Trial Court on this and on all other issues.

As a final matter, both Husband and Wife request an award of attorney's fees on appeal. In the exercise of our discretion and for the same reasons relied on in affirming the judgment of the Trial Court awarding Wife her attorney's fees at trial, Wife

is awarded her reasonable attorney's fees on appeal. This matter is remanded to the Trial Court for a determination as to the amount of Wife's reasonable attorney's fees on appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for a determination of Wife's reasonable attorney's fees on appeal and for collection of the costs below. The costs on appeal are assessed against the Appellant, Marvin Dewayne Echols, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE